MEREDITH HOWLAND, as Trustee, etc., Respondent, *v.* LOUISA HOWLAND CLENDENIN et al., Appellants, and LOUISA M. HOWLAND et al., Respondents.

The will of H., by its terms, gave his residuary estate to his children, their heirs and assigns, to be divided equally between them, subject, in regard to the portions of his daughters, to certain trusts thereinafter declared. Following this were provisions giving the portions of his estate designed for his daughters to his executors, as trustees, in trust, to invest the same as directed, and to pay over the interest and income to said daughters respectively during life. Upon the decease of a daughter the executors were directed to pay over and distribute the principal of her share to her issue. In an action for a construction of the will to determine as to the disposition of the portion of a daughter dying without issue, *held,* that while the language of the earlier provision of the residuary clause standing alone, would have given an absolute estate to the daughters, the whole read together gave simply a life estate to each daughter, and the portion of one dying without issue was not disposed of, but would go to the heirs at law and next of kin of the testator.

*Kellett* v. *Kellett* (L. R. [3 H. L.] 160); *Norman* v. *Kingston* (29 Beav. 96; affd. 3 De Jex, F. & G. 129); *McCulloch* v. *McCulloch* (3 Giff. 606), distinguished.

· (Argued June 1, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 14, 1890, which modified and, as modified, affirmed a judgment entered on the decision of the court at Special Term.

This action was brought to obtain a construction of the twenty-first clause of the will of Gardiner S. Howland, deceased, which clause and the facts, so far as material, are set forth in the opinion.

*Daniel G. Rollins* for appellants.

*Robert W. De Forest* and *Eugene D. Hawkins* for respondents.

FOLLETT, Ch. J.  Gardiner G. Howland died November 9, 1851, leaving a widow, five sons, four daughters and four grandchildren, the children of his deceased daughter Abbey Woolsey Wolcott.  He left a last will and testament which contains this clause :

"Twenty-first.  All and singular the rest, residue and remainder of my estate and property, both real and personal, whatsoever and wheresoever, I do hereby devise and bequeath unto my eight beloved children, that is to say :  William Edgar Howland, Annabella Edgar Howland, Abbey Woolsey Howland, Robert Shaw Howland, Maria Louise Howland, Rebecca Brien Howland, Meredith Howland and Gardiner Green Howland, Junior, and such other child or children as may hereafter be born to me, or wherewith my wife may be *enciente* at the time of my death, and to their respective heirs, executors, administrators and assigns forever, to be divided equally between them, or share and share alike, including the issue of such as may die before me, such issue taking the same share as their, his or her parent, or other ancestor would have taken if living, subject, however, in regard to the portions of my sons to the limitation herein next stated, and also subject in regard to the portions of my daughters to the trusts hereinafter declared in regard thereto, that is to say, with regard to the portions of my sons my will and direction are that my said sons be put into the possession and enjoyment of the one equal half part of their respective portions as soon as they shall severally attain the age of twenty-one years, and the other half as they severally reach the age of twenty-five years, which latter half my executors are hereby directed to retain in their possession and control until such latter age, but in the meantime, to pay to my said sons, respectively, the interest, dividends or other periodical income thereof.  And with regard to the portions of my daughters, my will and direction are that my said executors, and the survivors and survivor of

them be, and I hereby constitute them and him the trustees and trustee of the portions of my said daughters, respectively, during their respective natural lives; and I hereby give and bequeath the same to my said executors and the survivors and survivor of them accordingly, in trust for my said daughters, respectively, and to invest the same in their or his names or name as such trustees or trustee in the manner hereinafter directed, and to pay over the interest, dividends or other periodical income thereof to my said daughters, respectively, from time to time, to and for their own separate use and benefit, and upon their separate receipt, whether married or sole, during the residue of their natural lives, and upon their death, as each shall happen to die, to pay over and distribute the principal of the share or portion of the one so dying, to her issue living at the time of her decease, including the issue of such as may then be deceased equally, or share and share alike, the issue of any deceased child then living taking the same share as their, his or her parent or other ancestor would have taken if then living." The record does not disclose whether the residue was realty or personalty, or both.

This will was duly probated and the estate settled, and the residue divided pursuant to this clause, into ten equal shares, one of which was set apart for Louisa H. Clendenin and another for Joanna H. Grinnell, both daughters of the testator, neither of whom have borne children and both of whom have passed the child-bearing age. A dispute arose between said two daughters on the one side and their surviving brothers and sisters, and the descendants of the brothers and sisters who have died on the other side, as to the disposition which is to be made of the shares so set apart for said two daughters after their deaths without leaving children. Louisa H. Clendenin and Joanna H. Grinnell assert that in the event that they die without leaving children, that the portions set apart for them will form part of their respective estates, and that their personal representatives will be entitled to receive the same from the then trustees of said trust, and that they, the sisters, are entitled to dispose of their portions by will, and that in case

they die intestate their administrators will be entitled to receive said capital from said trustees and dispose of it in accordance with the statutes of this state for the disposition of estates of persons dying intestate. On the contrary, the respondents claim that in said event the capital must be distributed among the surviving children of the testator and the representatives of such as may then be deceased, as if the same were property as to which the testator had died intestate, or that the capital must be divided among the issue of the testator who may then be surviving, *per stirpes.*

The learned counsel for the appellant states in his brief that the will under consideration was executed December 29, 1839, some years before the passage of those statutes known as the Married Woman's acts, but an examination of the Appeal Book fails to disclose the date of the execution of this will or of any relevant fact outside of it which throws any light upon the intent of the testator, whose purposes must be ascertained by the court from the language of the clause above quoted. While engaged in interpreting this clause it must constantly be borne in mind that it is a residuary clause by which the testator probably intended to dispose of all of his estate not devised and bequeathed by the earlier provisions of the will, and that in construing wills, and especially residuary clauses, the courts lean towards an interpretation which will prevent partial intestacy. The testator provided for all of his sons in one manner, and for all of his daughters in another. All of the children took their shares in severalty, the sons' title vesting upon the death of the testator, but their possession and control was postponed until they reached the prescribed ages.

The learned counsel for the appellants states in his brief: "No one denies, or ever has denied, that the legal title is vested in the trustees. Mrs. Clendenin and Mrs. Grinnell, instead of owning equitable life estates, are, by the operation of our statutes, owners of a right to enforce the execution of the trust." To this we agree. He says that it does not follow from this that the daughters have no interest in the ultimate disposition of their shares; that is true, nor does it

follow from this that they have a legal interest in the ultimate disposition of their shares in case they should die without issue, and we are unable to find in this statement of the legal effect of the clause any authority for an inference that the testator intended that his daughters' life interest should be enlarged to an absolute estate upon their death without issue.

Counsel urges in the face of this concession that the earlier language of the clause by which in form, the shares are given absolutely to the children, is. controlling upon the subsequent language, and that the gifts to the daughters were absolute, subject, however, to the control of the trustees during their lives, and to the limitation over to their issue, if any survived them. The effect of such a construction would render the shares of those daughters dying without issue subject to the claims of their creditors, and to their power to sell their portions to take effect after death, or to dispose of them by will, and if not disposed of by will or contract, they would, after the payment of debts be distributed among their next of kin. Some part of the testator's intention is clear and beyond dispute. He intended not to vest the title to the shares of the daughters in them, but in their trustees, which he did by language clearly sufficient to limit the effect of the earlier positive language, which standing alone would have passed the title to the daughters. He also intended that his daughters should have no part of the principal of their shares, but the income only, and upon the death of either, leaving issue, her share to go to such issue. What were his intentions as to the dispositions of the daughters' portions in case they should die without issue? The provisions for the daughters made in the first lines are " *subject, in regard to the portions of my daughters to the trusts hereinafter declared in regard thereto.*"

After prescribing the limitations upon the sons' share the testator continues : " And with regard to the portions of my daughters my will and direction are that my said executors and the survivors and survivor of them be, and I hereby constitute them and him the trustees and trustee of the portions of my said daughters respectively during their respective

natural lives; and I hereby give and bequeath the same to my said executors and the survivors and survivor of them accordingly in trust for my said daughters respectively," et cetera. The earlier and later provisions of the clause read and construed together evince the intention on the part of the testator not to give these portions to the daughters absolutely, subject to the liability of being cut down to a life estate if they should die leaving children, but an intention to give to them the use of the portions for life and the remainder over to their children should they leave any. The words employed are such as are usually used, and have been held sufficient to effect such a result. (*Brewster* v. *Striker*, 2 N. Y. 19; *Wood* v. *Keyes*, 8 Paige, 365; *Vreeland* v. *Van Ryper*, 2 C. E. Green, 138.)

If upon the execution of the will the testator had been asked if it was his intention to empower his daughters to charge their shares with debts, in case they should die without issue, and to dispose of the shares by will or contract, to take effect after their death, we think, judging from the language of the clause, he would have answered in the negative. Had he been asked what would become of the shares in the contingency mentioned he probably would have said that the possibility had not occurred to him, and would have provided for the event.

Undoubtedly a testator, without violating any rule of law, could give an estate to trustees with directions to collect the income and pay it over to a beneficiary, and upon the death of the latter, the trust estate to sink into, and become a part of the estate of the beneficiary, but so far as we know, no will, which in express terms has so disposed of property, has been brought to the attention of the courts, and the fact that such a provision is very unusual does not aid us in coming to the conclusion that such a disposition was intended by the testator. It seems to us that the case is not different from what it would have been had the testator given the residue of his property to his executors with directions to convert it into money, divide it into ten shares, pay over the shares to the sons, and set up a trust for each of the daughters upon the terms of the present trust.

When persons claim rights under wills as against heirs and next of kin, the burden is upon them to establish the validity of their claims. This burden, it seems to us, the appellants have not successfully sustained, and that if they die without issue their portions must be distributed among the heirs at law and next of kin of the testator.

The learned counsel for the appellants cites in support of his contention several English cases. ( *Whittell* v. *Dudin*, 2 J. & W. 279; *Jackson* v. *Noble*, 2 Keen. 590; *Hulme* v. *Hulme*, 9 Sim. 644; *Mayer* v. *Townsend*, 3 Beav. 443; *Campbell* v. *Brownrigg*, 1 Phill. 301; *Eaton* v. *Barker*, 2 Coll. 124; *Winckworth* v. *Winckworth*, 8 Beav. 576; *Lassence* v. *Tierney*, 1 Mac. & G. 551; *Bell* v. *Jackson*, 1 Sim. [N. S.] 547; *Norman* v. *Kynaston*, 29 Beav. 96; affd. 3 De Gex, F. & J. 129; *McCulloch* v. *McCulloch*, 3 Giff. 606; Merseron's Trusts, L. R. [4 Ch. Div.] 182.)

These cases are referred to chronologically. In *Lassence* v. *Tierney* (*supra*), decided in 1851 by the Court of Chancery, the rule deducible from the earlier cases was stated by Lord COTTENHAM as follows: " If a testator leave a legacy absolutely as regards his estate, but restricts the mode of the legatee's enjoyment of it to secure certain objects for the benefit of the legatee, upon failure of such objects the absolute gift prevails; but if there be no absolute gift as between the legatee and the estate, but particular modes of enjoyment are prescribed, and those modes of enjoyment fail, the legacy forms part of the testator's estate, as not having in such event been given away from it. In the latter case the gift is only for a particular purpose; in the former the purpose is the benefit of the legatee as to the whole amount of the legacy, and the directions and restrictions are to be considered as applicable to a sum no longer part of the testator's estate, but already the property of the legatee. In every case, therefore, the question must be one of construction; and, except for the purposes of such construction, very little assistance can be derived from former decisions. It is, however, obvious that the intention that the gift should be absolute as between the legatee and the estate

is, as in all cases of construction, to be collected from the whole of the will and not from there being words which, standing alone, would constitute an absolute gift."

This case was confirmed by the House of Lords in *Kellett* v. *Kellett* (L. R. [3 H. L.] 160).

No light is thrown upon this subject by the subsequent cases. In *Bell* v. *Jackson* the testator provided : " I give to my granddaughter   *   *   *   the sum of 4,000 pounds, to be paid to her on attaining the age of 21 years." Previous to that time it was to be kept at interest by the executors and the interest paid to her. By a codicil he directed that the executors pay her the interest on 2,000 pounds until she reached the age of 23, and to accumulate the interest on 2,000 pounds until she reached that age, and then settle the whole sum, 4,000 pounds, upon her for life, and after death to her children.

The granddaughter attained the age of 23, but the legacy was not settled. She subsequently married and died childless. It was held by the vice-chancellor that the original gift was an absolute one, subject to the interests of children, if she had any. Precisely the same rule was held in *Norman* v. *Kynaston*, and in *McCulloch* v. *McCulloch*. In Merceron's Trusts this question was not decided. These cases are discussed by Mr. Jarman in his learned treatise on wills (Vol. 1, 871), and it is there (after giving, with approval, the rules of Lord COTTENHAM above quoted) said : " It is in the determination of this previous question whether, namely, the gift to the primary legatee is absolute or qualified, that the real difficulty of these cases generally lies. The intention is, of course, to be collected from the whole will." (Hawk. Wills, 276 ; 2 Will. Ex. [6 Am. ed.] 1398 ; Sch. Wills, § 559.)

This question and many of the cases are discussed in Redfield on Wills (Vol. 2, §§ 16, 17), who states the rule to be that if the testator intended to vest the legatee with title in the first instance, makes a clear gift, and then adds a qualification as to the mode of enjoyment or the direction in which it shall ultimately go, in case of the happening of a particular

contingency, which never happens, the original gift to the primary legatee becomes absolute. All of the authorities recognize this rule, and it is not inconsistent with the conclusion we have reached in this case.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.