J. W. HOUGH, Appellant, v. FIRST NATIONAL BANK, Appellee.

**BANKS AND BANKING:** Deposits—Erroneous or Improper Credit—
1    **Right to Correct.** The entry on the books of a bank of a credit in favor of one dealing with the bank, followed by the issuance and delivery of a deposit slip, does not conclude the bank, and such entry, if erroneous, or made under a misapprehension of the facts, may be corrected, so long as it remains a mere matter of bookkeeping.

PRINCIPLE APPLIED: A judgment defendant arranged with a bank for the money to pay the judgment and directed the bank

to send the money to the clerk of the courts. The judgment plaintiff seems to have had an account at the bank. The cashier, instead of sending the money to the clerk, delivered to the judgment plaintiff a deposit slip or receipt for the amount and credited the latter's account accordingly. The next day, the cashier learned that claim was made that certain attorneys had a lien on the judgment and, thereupon, he forwarded the money to the clerk and cancelled the credit theretofore made in favor of the judgment plaintiff. *Held*, the bank was within its rights— that the issuance of the slip and the entering of the credit did not transfer to the judgment plaintiff the title to any money.

**ATTORNEY AND CLIENT:  Authority of Attorney—Receiving**
2  **Money Due on Judgment.** An attorney whose authority has not been revoked has authority to receive from the clerk the amount of a judgment rendered in a proceeding in which the attorney was employed by the judgment plaintiff.

PRINCIPLE APPLIED: See No. 1. After the money was paid to the clerk, it was paid to the attorney who obtained the judgment for the judgment plaintiff. The authority of the attorney had never been revoked. *Held*, the payment to the attorney was, in legal effect, payment to plaintiff.

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge.

THURSDAY, DECEMBER 16, 1915.

THE opinion states the nature of the case and the material facts.—*Affirmed.*

*Edwards, Longley, Ransier & Smith,* for appellant.

*W. B. Ingersoll, E. R. O'Brien* and *E. H. Estey,* for appellee.

WEAVER, J.—The plaintiff brings this action at law, alleging that, on August 15, 1913, he deposited with the defendant bank the sum of $3,125.59, for which the bank, by its cashier, made and delivered to him a deposit ticket; and that thereafter, on August 16, 1913, he demanded of the bank repayment of the amount so deposited and repayment was refused. Upon this showing, plaintiff demands judgment in his favor for the full amount of the deposit, with interest. The defendant admits that, on the day named in the petition,

it issued to plaintiff a deposit slip for the sum of $3,125.59, but denies that it represented money received from plaintiff or for his use or account. It is alleged that the deposit slip represented a sum of money which had been placed in its hands as a special deposit by one Thorp, to be paid over to the clerk of the court in discharge of a certain judgment rendered in the district court against the said Thorp in favor of the plaintiff Hough; that plaintiff, well knowing the conditions upon which Thorp had made the deposit, stated to the defendant that the judgment had been discharged in full, and that, by reason thereof, he had become entitled to be credited with the full amount of the deposit; although, in truth and in fact, the judgment had not been discharged or released and no settlement or adjustment thereof had been made, and defendant, relying upon the truth of said representations, gave credit to plaintiff and issued him the ticket. Defendant further alleges that, after issuing the deposit ticket, it ascertained the true condition of the record relating to the judgment, and thereupon withdrew the credit it had given the plaintiff on its books and remitted the full amount of money received from Thorp to the clerk of the district court of said county, to be applied to the satisfaction of such judgment.

The mere reading of the issues as formally set forth in petition and answer naturally gives rise to the thought that the controversy involves no substantial right, and that, even if plaintiff's demand upon the bank was refused, as alleged by him, he has only to go to the clerk's office and draw the same amount of money paid in there to his credit, for the satisfaction of the judgment against Thorp. The puzzle is solved, however, when, upon going further into the record, we discover that plaintiff's attorneys, who procured the judgment in his favor, had filed, or attempted to file, a lien thereon for their services in that case, and that plaintiff is unwilling to recognize or pay such claim. For this reason, plaintiff refuses to acknowledge the payment made to the clerk, and insists that the bank, by its act in crediting him with the

amount of money left in its hands by Thorp, paid to him the full amount of the judgment, and that the money thereupon became his property as completely and absolutely as if Thorp had in person paid that sum directly into his hands.    The issue was tried to a jury and, at the close of the testimony, the court, upon defendant's motion, directed a verdict in its favor, and judgment was rendered thereon against plaintiff for costs.   Plaintiff appeals.

It is undisputed that Thorp left the money with the defendant bank to pay the judgment.   Concerning the circumstances of this payment or deposit, Thorp testifies:   "I left the money with the cashier, Hanson, on the 13th or 14th of August.   I instructed him to send it the next morning to the clerk of the court at West Union to pay the judgment which Hough had against me.   I did not give any other or different instructions to the bank with reference to this money."    Hanson, the cashier, who transacted the business with both Thorp and plaintiff, says:   "Mr. Thorp told me to satisfy the judgment against him by sending the money to the clerk of the court.   He never gave me any other or different instructions."   These statements harmonize and, as there is no evidence to the contrary, their truth may be considered established, for the purposes of this case.   As to what took place between plaintiff and the cashier, their testimony is more widely at variance.    Plaintiff's story is to the effect that, responding to information by telephone from the cashier that the judgment had been paid, or that the money was there for such payment, he went to the defendant bank, on August 15, 1913, where Hanson showed him a memorandum indicating that the amount due on the judgment was $3,125.59, and then asked, "What will you have for this?"  Plaintiff having suggested that he would take either draft or certificate of deposit, Hanson went behind the counter a moment, and when he returned, said, "I just credited your account.   You can check it out.   You probably won't need it all right away";

1. BANKS AND BANKING: deposits: erroneous or improper credit: right to correct.

and with that, he gave the defendant the deposit slip. At the same time, plaintiff signed and left with Hanson a receipt, as follows:

"$3,125.59                        Oelwein, Aug. 15, 1913.

"Received of First Nat'l Bank for B. E. Thorp, Thirty-one Hundred Twenty-five & 50/100 Dollars, in full satisfaction of judgment in action B. E. Thorp v. J. W. Hough.  ·

                                "John W. Hough."

On the next day, plaintiff returned to the bank and presented a check for the amount of the deposit slip, and payment was refused, because Hanson had discovered the alleged attorney's lien and that plaintiff was refusing to recognize it. Hanson, for the defendant, swears that he told plaintiff that Thorp had left the money with the bank "to satisfy the judgment at West Union"; but witness expressed the thought that he could turn it over to plaintiff direct. Plaintiff then suggested that he would take the money, but the witness responded, "No, I will give you a deposit slip for it as a receipt." At the interview next day, when payment of the check was refused, the cashier says he explained to plaintiff the embarrassment caused by the attorneys' lien,—that the bank could not pay the money over to him and expose itself or Thorp, or both, to liability for the amount of such lien,— and that, if plaintiff would clear the record in this respect, the · bank would at once pay the full amount of the deposit. He further says that, finding himself unable to agree with the plaintiff, he transmitted the full sum to the clerk at West Union. The deposit account of the defendant was corrected by charging it with "error", to the amount of the deposit slip. Plaintiff denies that Hanson informed him that the money had been left at the bank by Thorp with instructions to pay it to the clerk. It is also shown that, after the money covering the full amount of the judgment had been paid into the clerk's office by the bank, Mr. W. J. Ainsworth, an

attorney at law, who represented plaintiff in procuring the judgment, and whose authority to appear and act for him in the case had never been withdrawn, received and receipted for the full amount of the recovery and interest. There is other evidence having bearing upon the validity of the attorneys' lien; but, in our view of the rights of the parties to this action, that is a question we are not called upon to decide.

For two sufficient reasons, we hold that the lower court correctly directed a verdict for the defendant:

(1) It is shown without dispute that Thorp, having a credit at the defendant bank, specifically directed the cashier to send the money to the clerk's office for the satisfaction of the plaintiff's judgment; and if so, it was the cashier's duty to comply with the direction so given. With the banker's instinct to improve the opportunity to increase the amount of deposits in his bank, he arranged to transfer a credit for the required amount direct to plaintiff, instead of remitting the money to the clerk, as he should have done. Had plaintiff taken advantage of the situation to withdraw the money at once, doubtless the bank could not have compelled its repayment or return; but before any money had changed hands, and while the transaction still remained a mere matter of bookkeeping, the bank discovered the hole into which it was liable to fall, informed the plaintiff that it would not deliver the money to him, canceled the credit and sent the money to the clerk's office, where it properly belonged under the conditions upon which it was received from Thorp. And this we think it could rightfully do. The deposit slip is at most a mere receipt, which is open to explanation, and the circumstances under which it was given may be inquired into. *Keen v. Beckman,* 66 Iowa 672; *First Nat. Bank v. Clark,* (N. Y.) 17 L. R. A. 580. Plaintiff could not rightfully have complained, had Hanson refused at the outset to pay the money to him or to give him credit therefor and insisted upon making the payment to the clerk, to whom plaintiff or his authorized attorney could go and receive it. The credit which was given him was something

which he was not entitled to, because Hanson was not authorized to thus dispose of the fund left with him by Thorp; and in refusing to carry out the transaction, and cancelling the credit upon the books of the bank, plaintiff suffered no actionable wrong.

(2) Even if the first point be rejected as without merit, it further appears without dispute that, after the defendant had refused to pay the deposit to plaintiff, and had paid it over to the clerk in satisfaction of the judgment, plaintiff's attorney, who represented him in obtaining such judgment, and whose authority had never been revoked or withdrawn, collected and received from the clerk the full amount thereof and receipted the same upon the judgment docket. This the attorney had the legal right and authority to do (Code Sec. 319, Par. 3). The attorney's act, within the scope of his employment, was the act of the plaintiff himself. So far as its effect upon this case is concerned, it is as if the plaintiff himself had gone to the clerk's office and drawn therefrom the money which the bank had there paid in satisfaction of the judgment, and yet, with that money in his pocket, he should come into court insisting that defendant be compelled to pay him the same debt over again. The law will not permit double payment to be exacted in this manner. If it be true that plaintiff has some quarrel with his attorneys over the amount of their fees, he should himself bear the burden of fighting it out, and not shift it upon the shoulders of third persons, who have no manner of interest in the controversy.

2. ATTORNEY AND CLIENT: authority of attorney: receiving money due on judgment.

The judgment below is—*Affirmed*.

DEEMER, C. J., EVANS and PRESTON, JJ., concur.