## AMERICAN NAT. BANK OF STIGLER v. FUNK.

No. 8116—Opinion Filed May 14, 1918.

(172 Pac. 1078.)

(Syllabus.)

1. **Banks and Banking—Evidence—Deposit Slip—Effect—Explanation.**

   A deposit slip issued by a bank is but prima facie evidence that the bank received the amount of the deposit on the date shown by the deposit slip. It has the same force and effect as that of any other form of receipt, and is open to explanation as to the conditions surrounding the deposit, and the circumstances under which it was given may be inquired into.

2. **Attorney and Client—Lien—Fees or General Balance—Loss.**

   An attorney at law has a general possessory or retaining lien on property or money of his client in his hands for his fees or for any general balance due him from his client, and such a lien is not lost while the money is still under the control of the attorney's agent.

3. **Banks and Banking—Conditional Deposit—Knowledge of Conditions—Liability—Evidence.**

   Evidence in this case examined, and held (1) that the deposit made by a third person to the credit of the plaintiff was a conditional deposit; (2) that she and the bank had knowledge of the conditions under which the deposit was made; and (3) that the bank was not liable to the plaintiff for charging to her account the sum of $398.50 paid by it to the person lawfully entitled to the possession of such sum of money.

4. **Appeal and Error—Review—Findings—Sufficiency of Evidence.**

   Where there is any evidence reasonably tending to support the findings of the trial court, they should not be disturbed by the Supreme Court; but where, after a careful examination of all the evidence in the case, it is found that there is not any competent evidence to sustain the findings, the cause will be reversed.

Error from County Court, Haskell County; Wm. L. Crittendon, Judge.

Action by Mrs. Margaret B. Funk, as administratrix of the estate of H. H. Funk, deceased, against the American National Bank of Stigler, Okla. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions to grant a new trial.

J. B. Furry and E. C. Motter, for plaintiff in error.

T. T. Varner, for defendant in error.

RAINEY, J. Mrs. Margaret B. Funk, as administratrix of the estate of H. H. Funk, deceased, instituted this action in the county court of Haskell county, Okla., against the American National Bank of Stigler, Okla., for the recovery of the sum of $898.-50, claimed by her as a balance due from a sum of money deposited in said bank to her credit, as administratrix. The defendant pleaded that it had made payment in full to the plaintiff of all sums due her by virtue of said deposit. A jury was waived, and the cause was tried to the court, which resulted in a verdict for the plaintiff, to reverse which judgment the defendant has brought the case to this court. The parties will hereinafter be referred to as they appeared in the county court.

The circumstances out of which the controversy arose are substantially as follows: During the year 1912, H. H. Funk, deceased, employed J. B. Furry and Robert A. Zebold, as his attorneys, to institute suit to foreclose a mortgage on the property of the Stigler Light & Power Company, which resulted in a judgment for the plaintiff and a decree of foreclosure of the mortgage. The property was sold under the mortgage, and after a stubborn contest the same was confirmed by the district court, and sheriff's deed issued on March 1, 1913. The property was sold for more than enough to satisfy the judgment, and Mrs. Funk's claim was paid in full, together with the sum of $250 attorney's fees, the amount provided for in the mortgage. Upon confirmation of the sale the sheriff of Haskell county, James Keese, gave his check for the full amount of the judgment, payable to J. B. Furry and R. A. Zebold, in the sum of $14,959.93. Before the sale was confirmed Mr. Funk died, and his wife, Margaret B. Funk, was appointed administratrix of his estate. Mr. R. A. Zebold, one of the attorneys originally employed, resided in Muskogee, Okla., at the time of his employment, but in June, 1912, moved to Stigler, where he became connected with the American National Bank in the capacity of cashier. While his name appears of record as one of counsel until the case was concluded he testified that he was not connected with the case after June, 1912. Mr. Furry charged an additional at-

torney's fee of $250 to that named in the mortgage, and expenses incurred on various trips to Stigler, in the sum of $23.50, and so notified Mr. Roy Funk, a son of the plaintiff. The sale was confirmed after banking hours on March 1, 1913, and Mr. Furry, being anxious to catch a train back to Muskogee, Okla., gave positive instructions to Mr. Zebold to collect the money on the sheriff's sale, to remit him $398.50, the balance due on his fee in the case, $125 having been paid during the lifetime of Mr. Funk. It seems, however, that Mr. Zebold, being anxious to secure the deposit for the American National Bank of the full amount of the sum collected on the judgment, which deposit had been promised to him by the representatives of the Funk estate, on the suggestion of Roy Funk deposited the entire sum to the credit of Mrs. Funk, as administratrix of the estate, and delivered the deposit slip to Roy Funk. However, he explained to Roy Funk at the time the deposit was made that it was subject to Furry's claim in the sum of $398.50; that said amount would have to be paid Mr. Furry by Mrs. Funk by check, or that he would pay the same and charge it to her account.

With reference to the instructions given Mr. Zebold, Mr. Furry's testimony is as follows:

"I instructed him to get the check from the sheriff, James Keese, for the amount of the judgment and costs the plaintiff was entitled to in that action. The amount was $14,959.93. I believe that amount included $250 for attorney's fee collected from the defendants in that case as a part of the costs. I told Mr. Zebold to collect the money on the sheriff's check and remit to me $398.50, which was the balance of the attorney's fee which I charged in the case. There had previously been paid $125 by Mr. Funk to apply on attorney's fees and my fee in the case would be $500, and that my expenses from the number of trips that I had made to Stigler and back in attending court in that case. I never at any time authorized the bank to deposit that money to Mrs. Funk's credit or any part of it to her credit. I didn't at any time know that Mrs. Funk intended to carry any deposit in the American National Bank.. My instructions were to collect the money on the check and remit to Mrs. Funk the amount of the judgment after deducting the amount of the fee I charged in the case and my expenses. I told Roy Funk the day, on March 1st, that the fee, right here in the court room, in the presence of Mr. Curry, that the fee would be $500."

Mr. Zebold, one of the witnesses placed on the stand by plaintiff as her witness, with reference to how the deposit was made, testified as follows:

"Upon the evening of March 1, 1913, after banking hours, approximately 6 o'clock, you (Judge Furry) delivered a check by James Keese for $14,959.93 and this check was payable to yourself and myself. Your instructions to me were to take the check, collect and remit you $398.50, and to pay the balance to Margaret B. Funk, administratrix of the estate of H. H. Funk, deceased. I took the check, went over to the bank, went in sometime between 6 o'clock and 7 o'clock, made a deposit ticket in the name of Margaret B. Funk, administratrix of the estate of H. H. Funk, deceased, and entered the check for $14,959.93, made a duplicate of that deposit ticket, and delivered the duplicate to Roy B. Funk, and told him that his mother was to send Judge Furry a check for $398.50, and, in the event that she did not do so, that the sum would be charged against this account and remitted to Judge Furry, because I had received those instructions from him when he delivered to me the check for deposit. * * * Q. Didn't you deposit the check in the name of this plaintiff in the way you did at the suggestion of Mr. Funk, after some protesting on your part? A. I did. Q. Just state to the court what was said. A. I told Roy what my instructions were to deduct the $398.50 from it, and from him I received authority to give his mother a deposit for this judgment, or rather it had been the understanding between us that I was to have the benefit of the deposit or until they sought new fields of investment. Roy said his mother would feel better about it if she could issue check for that amount, $398.50, to you. Under those conditions I issued this deposit ticket, of which this copy introduced here is a duplicate, and delivered this duplicate to Roy Funk with that understanding, and told him that his mother was to send me a check, and if she did not I would charge it to her account; that I had received the check from you with those instructions. Q. Did you notify Mrs. Funk of the conditions or instructions under which the deposit was made? A. I did. Q. When? A. I dictated a letter on March 3d. This deposit was made after banking hours on Saturday —showed on Monday's business. I dictated a letter to Mrs. Funk, which was written on March 4th, the next day or the day after, and explained to her just how the case had been terminated, and gave her all the details relative to your charge for attorney's fee and the conditions surrounding this deposit. I was to write a letter to his mother explaining this deposit, and he was to do the same verbally. Q. At the time you had this conversation with Roy B. Funk at the bank about depositing this sum in his mother's name, I will ask you whether he didn't state at that time he would see that his mother sent a check for the amount due

me for the sum of $398.50? A. That is my recollection of the conversation."

There was introduced in evidence the letter written by Mr. Zebold to Mrs. Funk. In this letter, which is quite long, Mr. Zebold gave the history of the case in some detail, explaining the arduous and valuable services rendered by Mr. Furry in the case; stated that the writer was not entitled to and did not claim any part of the fee, but that the fee charge by Mr. Furry was very reasonable. Relative to the condition of the deposit the letter reads as follows:

"Knowing you quite well, I deviated from the line of instructions received from the judge, and gave you credit in the bank for $14,959.93, subject, of course, to the conditions surrounding the deposit, and I am awaiting a check from you for the attorney fees and expenses in the matter."

Mrs. Funk did not send the check as requested by Mr. Zebold, but instead sent only $135, which was refused. Mr. Furry then drew on Mr. Zebold, personally, for $398.50, which draft was paid by Mr. Zebold and charged to the account of Mrs. Funk. The record further shows that Roy Funk made no objection at any time to the fee charged, but suggested to Mr. Zebold that he was without authority to allow it. He further testified that he had no authority in the premises other than to receive the deposit slip.

Under the above state of facts, the trial court found for the plaintiff, doubtless on the theory that the bank was bound by and could not dispute the deposit slip.

Counsel for defendant contend that on the undisputed testimony in this case and the conceded facts that the judgment of the court is wrong as a matter of law, and counsel for plaintiff say that the sole question is whether the defendant was legally justified in paying the draft drawn on Mr. Zebold by Mr. Furry and charging the amount thereof to the account of the plaintiff.

A deposit slip is but prima facie evidence that the bank received the amount of the deposit on the date therein stated. It has the same force and effect as that of any other form of receipt, and is open to explanation as to the conditions surrounding the deposit, and the circumstances under which it was given may be inquired into. Hough v. First Nat. Bank of Oelwein, 173 Iowa, 48, 155 N. W. 163; Keen v. Beckman et al., 66 Iowa, 672, 24 N. W. 270; First Nat. Bank of Union Mills v. Clark, 134 N. Y. 368, 32 N. E. 38, 17 L. R. A. 580; Davis v. Lenawee County Savings Bank, 53 Mich,

163, 18 N. W. 629; Stair v. York Nat. Bank, 55 Pa. 364, 93 Am. Dec. 759.

This is especially so where the deposit is made by the depositor in the name of a third person. The applicable principle is well stated by Tiffany in his work on Banks and Banking, par. 15, p. 42, as follows:

"Where a deposit is made in the name of a third person, the bank must make payment to such person, in the absence of any adverse claim by the actual depositor or another. The actual depositor has a right to demand payment from the bank if the money deposited was his own, and he did not intend to transfer the beneficial ownership of the deposit to the person in whose name it was made."

We understand from the brief of counsel for plaintiff that he concedes that the bank may show that the deposit was a conditional deposit, but counsel contend that the question as to whether the deposit in this case was a conditional deposit was a question of fact, that the trial court determined against the defendant, and for that reason the judgment should not be disturbed. This position is obviously correct if the evidence in the record reasonably tends to support the judgment. We have carefully read and considered all of the evidence in the record, and have concluded that the judgment is not reasonably supported by the evidence.

It is a well-settled proposition of law that an attorney has a general possessory or retaining lien on property or money of his client in his hands for the fees or for any general balance due him from his client. 6 Corpus Juris, 770; 2 Ruling Case Law, §§ 150-152, inc., pp. 1063, 1064. While such a lien depends upon the attorney's possession, and is lost if possession is voluntarily relinquished to the client, we do not think, under the facts of this case, that such possession was voluntarily relinquished, but, on the contrary, was retained. As we have read the record, the uncontradicted and undisputed evidence in the case shows that Mr. Zebold was not acting in the capacity of an attorney for Mrs. Funk when he received the check from the sheriff in payment of the judgment, but was acting as the agent of Mr. Furry, who had the retaining lien on the funds represented by the sheriff's check. The possession of Mr. Zebold was that of Mr. Furry, and control over that part of the proceeds of the judgment claimed as a fee, to wit, $398.50, and the possession of the same, were never voluntarily surrendered by Mr. Zebold to Mrs. Funk. So far as the bank was concerned, Mr. Furry, through his agent, still retained

control and constructive possession of this part of the fund. This control and possession did not in any wise preclude Mrs. Funk from litigating with Mr. Furry the reasonableness of the fee charged by him. The record discloses that the fee charged was very reasonable for the services performed, and no other claim is made. It seems that Mrs. Funk has brought suit against the bank on what she assumes to be her technical legal rights. But since the bank, through Mr. Zebold, its cashier, had recognized the claim of Mr. Furry to the amount of the fund claimed by him, and issued the deposit slip on this understanding, and with notice to Mrs. Funk as to the conditions surrounding the deposit, the bank not only had the right, but it was its duty, to pay the amount due Mr. Furry upon his demand, and to charge the same to the account of Mrs. Funk, to whose account it had been erroneously deposited, in violation of the specific instructions given by Mr. Furry. The deposit was not, in fact, made by Mrs. Funk, and she was only entitled to have deposited to her credit as much of the proceeds of the judgment as were released to her by Mr. Furry through Mr. Zebold.

The cause is therefore reversed and remanded, with instructions to. grant a new trial.

All the Justices concur.