**STATE ex rel. MOTHERSEAD, Bank Com'r, v. DYER et al.**

No. 17244.    Opinion Filed Sept. 13, 1927.

(Syllabus.)

1. **Attorney and Client—Attorney's Lien on Prop:r.y or Money of Client in Hands of Attorney.**

An attorney at law has a general, possessory or retaining lien on the property or money of his client in his hands for his fees or for any general balance due him from his client, and such lien is not lost or destroyed where such property or money remains in the hands of said attorney or under his control.

2. **Same—Possessory Lien on Note Received for Collection not Lost by Attaching Same to Claim in Bankruptcy Proceeding.**

Where a promissory note is by the owner and holder thereof placed in the hands of attorneys for suit and collection, and after suit brought thereon the maker of the note goes into bankruptcy, the filing of a claim for the amount of the note in the bankruptcy proceeding and the attaching of the original note thereto in proof of said claim is not such a parting with the possession thereof by such attorneys as will. waive or release their general possessory or retaining lien upon said note or the proceeds thereof.

3. **Same—Effect of Attorneys Retaining Fee from Collection and Remitting Remainder to Client.**

Where a note is by the owner thereof placed in the hands of attorneys for suit and collection, and subsequent thereto the maker of the note is adjudged a bankrupt and said note is by said attorneys attached to and made a part of the claim against the bankrupt estate, and where the first and final dividend of said estate is paid to said attorneys, who deduct therefrom the amount of money admitted to be due them by the owner thereof and remit the correct amount to their client, this is not a conversion in contemplation of the provisions of section 7423, C. O. S. 1921, so as to release the general retaining lien of said attorneys upon said fund.

Commissioners' Opinion, Division No. 2.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by S.ate ex rel. O. B. Mothe.:sead, State Bank Commissioner, against C. F. Dyer and H. E. Keim, partners, doing business under the firm name and style of Dyer & Keim, to recover certain moneys alleged to have been converted by defendants. From a judgment for the defendants, plaintiff appeals. Affirmed.

M. W. McKenzie, for plaintiff in error.

Dyer & Keim, for defendants in error.

BENNETT, C. Plaintiff brought suit in the district court of Garfie.d county against the defendants for the recovery of certain moneys alleged to have been converted by the defendants to their own use. The cause was tried to the court without the intervention of a jury and there was judgment for the defendants, from which the plaintiff appealed and lodged the case in this court for review. The parties plaintiff and defendant will be designated as they appeared below.

The petition in substance alleged that O. B. Mothersead is the legally appointed, qualified, and acting Bank Commissioner of the state of Oklahoma, and as such has charge of the affairs of insolvent state banks within the state; that prior to August 29, 1923, the Farmers State Bank of Lahoma was a state banking corporation organized and doing business under the laws of the state of Oklahoma, on which date the said institution appearing to be insolvent, was taken over by the Commissioner for the purpose of liquidation of its affairs; that the defendants as attorneys had represented said bank prior to its failure, and that said bank was indebted to said defendants for legal services rendered prior thereto in the sum of about $210.

That prior to the failure of said bank one Vosberg was indebted to said bank in the sum of $658, and the note evidencing said indebtedness had been placed in the hands of defendants for collection and suit, and that the defendants had filed suit thereon; that shortly after the said suit was filed Vosberg went into bankruptcy and said note was returned to the bank and placed among its other assets. That a short time thereafter said bank became insolvent and its affairs were taken over by the Commissioner as herein set out and that one E. L. Semke was appointed liquidating agent for said bank; that Semke thereupon delivered said note of Vosberg to defendants for the purpose of preparing and filing a claim in the Vosberg bankruptcy proceeding, and that thereafter the bankrupt estate of said Vosberg paid a first and final dividend on the Vosberg note in the sum of $329 21, which

payment was delivered to defendants and that said defendants deducted the sum of $210, which represented the amount of their prior claim, and $50 for their services in the bankruptcy proceeding, and that the retention of the $210 was wrongful and unlawful, since the amount of the prior claim was not secured or preferred in any way, but was simply an ordinary claim against said bank.

The answer was, first, a general denial. Further answering defendants state that prior to the 29th of August, 1923, the Farmers State Bank of Lahoma, Okla., was indebted to the defendants for legal services performed in the sum of $260; that on June 8, 1923, said bank engaged the defendants to collect one certain promissory note signed by C. J. Vosberg in the sum of $658.42, and that said attorneys brought suit on said note against the maker thereof in the district court of Garfield county, Okla., said suit being No. 6644. That during the pendency of said action the said Vosberg was adjudicated a bankrupt and that defendants, continuing in the employment of said bank and for the purpose of collecting said note, prepared and filed said bank's claim against the bankrupt estate of said C. J. Vosberg and that later there was paid on said claim to the defendants $329.21, which was the first money or property of said bank which came into the possession of these defendants, and that the defendants deducted therefrom the amounts due them, to wit. $210 prior account and $50 for the bankruptcy proceedings, totaling $260. and remitted the balance; that their claim against the bank was due and that defendants had a lien 'upon such funds, which lien they exercised by liquidating their claims out of the amount collected.

After the general demurrer by plaintiff to the defendants' answer was overruled, a reply by general denial was filed by the plaintiff.

E. L. Semke testified for plaintiff in substance as follows: That he was president of the Farmers State Bank of Lahoma from November, 1921, until July, 1923; during that time Dyer & Keim were attorneys for the bank; that the bank was sold July 14, 1923; after this time the bank became insolvent and was taken over by the State Bank Commissioner, Mr. O. B. Mothersead; that during the time the witness was president of the bank he delivered to Dyer & Keim, attorneys, the said Vosberg note for the purpose of bringing suit; this was in June, 1923; said suit was filed and soon thereafter Vosberg took bankruptcy and after that the attorneys either mailed the note to the bank or the witness went over and got it, the attorneys representing that the bankruptcy killed the suit, or something to that effect; this was before the bank failed. The witness was appointed liquidating agent; that the note was then in the bank and the witness took the note to Mr. Keim to have him file claim with the referee in bankruptcy as he was about to pay out on the claim; that at this time the note was delivered personally to Mr. Keim of the firm of Dyer & Keim and they filed the claim; $329.21 was paid on the claim and this amount, less $260, was paid the witness as liquidating agent. The defendants filed no claim for services rendered the bank with the witness as liquidating agent. Witness objected to the deduction by the defendants and consulted the banking department about what should be done in the premises. Witness is not sure whether the case against Vosberg was dismissed. The amount which was retained out of the Vosberg collection was due and owing to the firm of Dyer & Keim by the bank. There was no dispute about the account, nor the services, nor the items. The balance which they deducted was due them. The original note was attached to the claim in the Vosberg bankruptcy case.

C. F. Dyer, one of defendants, testified that he was an attorney and member of the firm of Dyer & Keim; acquainted with the case of Farmers State Bank of Lahoma v. C. J. Vosberg; also acquainted with Vosberg; there were several conversations in the offices of Dyer & Keim with E. L. Semke, the president of the Farmers State Bank; these were preliminary conversations and before the note was brought to the attorneys' office. The original note was delivered to the office of Dyer & Keim, and was always kept there in their files. Witness remembers the bankruptcy matter of Vosberg; remembers distinctly conference with E. L. Semke after he became liquidating agent of the bank. The preliminary conversations had to do with the preparation of the claim. The claim was first written in longhand by Mr. Keim and then the matter was submitted to witness for his opinion in the presence of Semke. The question arose as to how Semke should sign the claim, it being a printed bankruptcy form and required signing by the cashier or treasurer; some discussion was had about that; then there was a discussion of attaching the original note to the claim under the rule of the bankruptcy court. It is the recollection of the witness that Mr. Keim went to the file in the office of Dyer & Keim, took the original note out and attached it to the claim. Witness says that he

knows that the note was in the files of the defendants and remained there, and if it ever was taken out he knew nothing of it; remembers conversation between the firm and Mr. Semke with reference to the sale of the bank, and says that he will swear that he had a copy of the note made at that time to put in the bank to show that the original was in the hands of attorneys for collection. Semke came in in response to notice from the defendants to prepare and file claim against the bankrupt's estate. The defendants collected $329.21 and deducted from that sum the sum of $210, which the bank owed defendants for prior services, and $50 for services in the Vosberg bankruptcy matter. Witness never filed a claim with the liquidating agent for services rendered the bank prior to its failure because he had a lien under the law and did not have to file it. The note never went out of the possession of defendants.

H. E. Keim for defendants testified: Witness is a member of the firm of Dyer & Keim, attorneys, of Enid, and was such during the time Semke was president of or connected with the bank; defendants had possession of the Vosberg note at the time suit was brought against Vosberg; witness recalls the fact that Semke, the liquidating agent, came into office of defendants to prepare claim against Vosberg estate; witness notified Semke about Vosberg bankruptcy and that it would be necessary to file a claim against the estate, and upon receipt of notice that the referee would pay a dividend the defendants notified Semke. Witness remembers writing out in longhand the claim for filing against the bankrupt estate and attaching the original note to the claim. This note was taken from the file of defendants where it had always remained. Upon payment to defendants of dividend of $329.21, $260, being the claim of defendants for prior services in the sum of $210, and $50 in the Vosberg matter, was deducted.

The foregoing is the substance of the material testimony.

Upon consideration of the foregoing testimony the court found the issues in favor of the defendants and against the plaintiff. The court further found that the defendants were not guilty of conversion of the sum of $210, but that defendants had a general, continuing, and subsisting attorney's lien in said amount, and that from a preponderance of the evidence the Vosberg note referred to in the pleadings and in the evidence came into possession of defendants June 8, 1923, and remained continuously in their possession until the same was attached to the claim of the liquidating agent and filed in the bankruptcy of C. J. Vosberg.

Plaintiff assigns five grounds of error, but in his brief his contentions are set out under two propositions: First, that the deduction of the sum of $210 from the amount of the dividend check in the Vosberg bankruptcy constituted an appropriation and conversion of said amount which extinguished any attorney's lien which the defendants might have had on said dividend check; and, second, that the attaching of the original note to the claim in bankruptcy filed by the liquidating agent constituted the relinquishment of possession such as to destroy the attorney's lien of defendants.

Now, as to proposition No. 1. The brief of the plaintiff in error at pages 5 and 6 says:

"The main question presented to this court is whether or not an attorney who performs legal services for a state bank prior to its insolvency and later on performs services for the liquidating agent of an insolvent bank is entitled to collect a balance which the bank owed him, from the proceeds of moneys or funds which come into his hands in the course of his employment as attorney for the liquidating agent."

The solution of the above query is to be determined by the answer to the inquiry: What liens, if any, have attorneys of record against causes of action, counterclaims, or moneys for the collection or enforcement of their claims and fees for services? Section 4101, C. O. S. 1921, provides for a contingent fee provided the same does not exceed 50 per centum of the net amount of such judgment as may be recovered, etc. Section 4102 provides that the adverse party shall become liable to the attorney if he shall deal with the client, and section 4103 provides for the amount of recovery, etc. The foregoing sections without question assure to an attorney a lien upon the cause of action or recovery for his fee earned in that particular case. It will be observed, however, that the language of the act providing this lien is very broad. In the case of Roxana Petroleum Co. v. Rice et al., 109 Okla. 161, 235 Pac. 502, the eighth paragraph of the syllabus is as follows:

"The general or retaining lien of an attorney is his right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid. This is the common-law rule and our statute providing for the attorney's lien is declaratory of this rule. The rule is broad enough to include all documents, property, or money under the lien

for fees due in the general employ of the client as well as documents, property, or money coming into the hands of the attorney in the particular case in which he is representing his client." ·

To the same effect is the case of American National Bank v. Funk, 68 Okla. 169, 172 Pac. 1078, in which the court says:

"It is a well-settled proposition of law that an attorney has a general possessory or retaining lien on property or money of his client in his hands for the fees or for any general balance due him from his client. 6 C. J. p. 770; 2 Ruling Case Law, secs. 150-152, inc., pp. 1063, 1064. While such a lien depends upon the attorney's possession, and is lost if possession is voluntarily relinquished to the client. * * *"

In 6 C. J. pp. 765-766, it is said:

"An attorney's lien is of two kinds: one is called the general, retaining, or possessory lien, and the other the special, particular, or charging lien. An important distinction exists between the general or retaining lien and the special or charging lien of an attorney in respect both to the extent of the claims secured thereby and to the manner of enforcement. The general or retaining lien extends to any general balance that may be due to an attorney for professional services, either in the particular matter in connection with which he came into possession of the money, papers, etc., or in any other matter, while the special or charging lien is strictly confined to the fees and costs due for services rendered in the particular suit wherein the judgment was recovered or the fund impounded."

The same authority, on page 766, defines this general lien as follows:

"The general or retaining lien of an attorney is his right to retain possession of all documents, money or other property of his client coming into his hands professionally until a general balance due him for professional services is paid."

At page 803 of the same volume will be found these words:

"The general or retaining lien cannot be actively enforced. It is a mere right of the attorney to retain the papers, etc., of his client in his possession until his claim is satisfied; it confers no further rights, and is valuable to the attorney in proportion to the extent that such retention by him will embarrass the client, that is to say, he cannot sell said papers under process to foreclose his lien, as may a pledgee or a mortgagee in other cases, but his lien extends only to the right to retain such papers until his debt is paid."

Counsel for plaintiff in error in his brief quotes from the case of McDonald v. Charleston, etc. Ry. Co., 93 Tenn. 281, 24

S. W. 252, an excerpt which in substance reflects the exact holding last quoted and he uses this further language in his brief:

"Under the most favorable view of the law, therefore, with regard to the case of the defendants, it might be held that they had a general or retaining lien on the dividend check paid by the bankrupt estate for the general balance due them for professional services and they might have retained this check for the purpose of securing such advantage or payment as the cases say: 'So far as the client might be worried thereby.' They had no right whatever under such a lien to cash the dividend check and deduct from the proceeds thereof the amount of the old balance due them together with their fee in the present case and remit the difference to the liquidating agent. This amounted to a conversion of the property held under the lien in the sum of the $210 representing the old balance and the plaintiffs should, therefore, have been given judgment for this sum. Sec. 7423 Compiled Okla. Statutes 1921 provides as follows: 'The sale of any property on which there is a lien, is satisfaction of the claim secured thereby, or, in case of personal property, its wrongful conversion by the person holding the lien, extinguishes the lien thereon.'"

Counsel then cites the case of Peoples Bank v. Frick Co., et al., 13 Okla. 179, 73 Pac. 949, wherein it is said:

"Where one wrongfully converts property upon which he has a lien, such lien is extinguished"

—and he cites also the case of Chadwell v. Brown, 88 Okla. 44, 210 Pac. 410, wherein the court holds:

"Under and by virtue of section 3843. Rev. Laws 1910, a person holding a lien on personal property extinguishes the lien by wrongfully converting said property to his own use."

The facts in the Frick Case, supra, are that one D. W. Blaine sold a certain traction engine which belonged to Frick Company and took a series of notes payable to himself and thereafter the said Blaine negotiated these notes to a bank and received credit for the same on an indebtedness of his to the bank. Blaine was not the agent of Frick Company but claimed a commission of $50 for having made the sale. The only excuse for negotiating these notes which did not belong to him was that he claimed that the company owed him a commission of $50 for the sale of the engine. This was an out and out fraud from start to finish and even the court says that Blaine's actions are unwarranted, that his conduct is saturated with bad faith, that he is a mere intermed-

dler, and that he sold and converted property which did not belong to him.

In the Chadwell Case the facts are that plaintiffs rented defendant's building for the purpose of running a rooming house and agreed to pay $95 per month as rental therefor. Upon the failure of plaintiffs to pay the rental for the month of May, the defendants, without formality or notice, and while plaintiffs were away from home, took possession of the house, including $1,500 worth of plaintiff's furniture, and ran the same as a rooming house continuously thereafter for almost four years. The rental contract provided for a lien on the furniture for the payment of the rent. There was only $45 rent due, that is, rent for one-half of May. The court held that the taking possession by defendants, not for the purpose of foreclosure, but for the purpose of running the rooming house and using the plaintiff's furniture, all of which was clearly shown, was a conversion of plaintiff's property and that it had the effect of releasing the furniture from the lien. How these cases, both utterly reeking with bad faith and saturated with fraud, could be held to be parallel to the case in question is quite beyond us, or how, if at all, the law applicable to the cases just named, could affect the case in question is not clear to our minds.

The court in the instant case had abundant evidence from which to find that the note placed in the hands of defendants for collection remained there always, and we shall treat that finding as a fact, as we are required to do. Therefore, we have a situation involving these facts: The plaintiffs bring a suit in behalf of Farmers State Bank, the owner, on a promissory note; the defendant in the action, before judgment, goes into bankruptcy and the attorneys file a claim in the bankruptcy court attacking the original note to said claim as an exhibit in order to receive their proper portion of the dividend from the bankrupt estate. A first and final dividend is paid to these attorneys amounting to $329.21. The defendants charge $50 for the claim before the bankrupt estate and the bank, the owner of the note, is indebted to the attorneys for prior legal services in other matters in the sum of $210. Therefore the attorneys deduct the amount of their attorney's fees, amounting to $260, and remit to the bank or its trustee the balance. The president of the bank admits the correctness of the amount due the attorneys, to wit, $210, for prior legal services about which he says there is no controversy either as to the services or the value thereof, and also that the charge of $50 for services in the bankrupt matter is proper, but he simply contends that the attorneys should not have deducted the $210 from the amount in their hands.

The law of the case seems simple. Under our statutes and decisions it is clear that the attorneys have the right to a lien for the $50 and under the common law as interpreted by Roxana Petroleum Co. v. Rice, and American National Bank v. Funk, supra, referred to in brief of plaintiff in error, the defendants have a general retaining lien on said note and the proceeds thereof for any general balance owing by the bank to said attorneys. The correctness of these cases with respect to liens is not challenged by the plaintiff and we therefore treat these holdings as correct and conclusive. What, therefore, were the defendants to do after receiving this payment of money? Were they simply to take out the $50 and hold the remainder until the plaintiff should sue and recover the same, which seems to be indicated as the proper course by plaintiff, or were they to pay over the $210 and then sue to recover it back? This would be childish, unbusinesslike and unwise. Plaintiffs claim, in the next place, that the defendant attorneys lost possession of this note in filing it as a part of the claim against the bankrupt estate to the extent that their general possessory lien was lost. The absurdity of this contention may be clearly seen by remembering that these attorneys **took this note for the purpose of collection.** First, they brought a suit on it, which was a necessary first step; second, when the defendant went into bankruptcy, the next proper, prudent and necessary step (and the only step open to them) was to file a claim against the estate of the bankrupt; third, and in doing so, under the rules of the court, they must of necessity attach to their claim the original note. Did they, by taking these proper, prudent, and necessary steps, and the only steps which were open to them to collect the note, release and forego and nullify the lien which protected them? This question furnishes its own answer.

The defendants were entitled to the sum of $260. This is not denied. It is not denied that they had a lien in the sum of $260. It is not denied that promptly after the payment came into their hands they remitted to plaintiff the collection, less the sum of $260. Where then can the plaintiff complain? How has he been hurt or damaged? Have the defendants, by deducting the fees for the payment of which the law gives them a lien, converted any property that did not

belong to them so as to release the lien given them by statute or by the common law? Or have they in any particular surrendered for one moment the possession of the note in such a manner as to nullify their lien in the premises?

Plaintiff in his brief says also that the holding of the trial court in this case established the defendants as preferred creditors of the insolvent bank. That, as we understand it, is not only the intent and purpose but also the effect of all liens. And we know of no authority and none has been brought to our attention which would indicate that when such a lien has once become fixed it will be released, discharged, or nullified by the insolvency or the consequent receivership of the debtor. It has been our understanding that it is a part of the business of receivers not only to recognize but to protect all valid liens which may affect estates coming into their hands.

Plaintiff argues also that even though defendants had a valid possessory lien upon the Vosberg note or its proceeds, they should not have collected the dividend check, but that they should have simply held it. They do not indicate how long but insist that it should have been held. Good business and good sense would have dictated the immediate collection of the check. What sufficient excuse could defendants have made if they had quietly retained the possession of the check, even for ten days, and if the bank on which the check was drawn had failed?

It is true that if a lien holder converts personal property he thereby releases his lien, probably upon the ground that the owner should have something to say as to how and when and under what conditions his property shall be disposed of, but certainly if an attorney is entitled to hold $100 until he is paid a fee of $50, no theory, however fine spun, could be conjured up by which it might be contended that anyone would be wronged if the attorney should pay over to the client $50 and retain the balance.

We have carefully examined the brief and the contentions of plaintiff in this case and we must and do decide that they are wholly without merit, and for that reason the judgment of the court below should be and the same is in all respects affirmed and it is so ordered.

DIFFENDAFFER, JEFFREY, HALL, and REID (sitting in place of HERR, absent), Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 6 C. J. p. 760, §§362, 363; p. 770, §368; p. 775, §377; anno. 33 A. L. R. 1296; 2 R. C. L. p. 1063; 1 R. C. L. Supp. p. 691; 6 R. C. L. Supp. p. 120. (2) 6 C. J. p. 777, §384 (Anno). (3) 6 C. J. p. 776, §380 (Anno).