HAYNES, J.
In this cáse a petition in error is filed for the purpose of reversing thegjudgment of the court of common pleas, the main. *664 question and argument being that the verdict and judgment is against the evidence as presented to i,be court on the trial below. The petition sets up that the plaintiff below was employed as a salesman in the carpet department of Milner & Company’s store in Toledo, Ohio, and was to receive for his services the sum of $12 per week, and he says “said contract provided further that said position of said plaintiff in said store of defendant should be a permanent one. Plaintiff says that the term ‘permanent’ has acquired a distinct meaning, by the usages of trade and business, in said particular line of employment, which usage was at the time of said contract, and now is, well known to plaintiff and to defendant, its agents and servants, and that said usage thereby became a part of said contract; that is to say, that it was thereby agreed between said parties plaintiff and defendant that the plaintiff should be and was employed by said defendant in said carpet department for at least the period of one year from said 28th day of February, 1898;” that he entered upon the employment on that day. and continued in it for the period of twenty-one weeks, but on the 23d of July, 1898, before the expiration of the contract, without cause, and in breach and in violation of the terms of the contract, plaintiff was discharged; that he re-entered the employment again on the 17th day of September, 1898, under his contract, but was subsequently discharged on the 29th day of September, 1898, in violation of the terms of the contract. He brings suit for $354, the amount which he claim» Is due him at the rate of $12 per week for the portion of the year which he did not and was not permitted to work.
The answer denies the material allegation* of the petition setting forth the question of usage, but admits that the plaintiff below went into its employment at the rate of $12 per week. It says that he was discharged because his habits were not good, among other thing, and that he did not perform his duties properly.
On the trial of the case testimony was offered by the plaintiff, and a part of it was in correspondence that took plaee be tween the plaintiff and the defendant through its agent, the foreman having charge of this department, Corcoran by name. The plaintiff wrote several letters, the first one of which is as follows:
"Delavan House, Albany, N. Y.,
“January 10th, 1898.
“J. A. Corcoran, Esq.,
“Dear Sir: I wish to communioate withyouin order to find out if you will have a vacancy for a salesman in your carpet denartmen either now or in the near future.”
There are some other matters in it not material to this case. Subsequently another letter was offered, which is dated January 18th, 1898.
“Mr. Hamilton Hill,
“ Delavan House, Albany, New York,
“Dear Sir: Your letter received, and in reply will say that
do not know of any positions that are open in any of the carpet department* in Toledo at the present time. • I expect to put an extra man in our ingrain department this spring, but the position will not be a very heavy salaried one.
“Very respectfully yours,
“J. A. Corcoran.”
*665 To that an answerZwas written on the 22d of Jaunary, 1898, and that reads as follows:
“Delavan Hotel, Albany, N. Y.,
“Jan. 22nd, 1898.
“J. A. Corcoran, Esq.,
“Dear Sir: Your letter of January 18th is to hand, saying that a position for a salesman in your ingrain department will be open this spring. Would you please be kind enough to inform me what salary you will pay if only for the season, and what you will pay if for an annual or permanent position. And also please state whether the position soon to be vacant in your ingrain department is for the season or permanent.”
To that an answer was sent, dated:
“Toledo, O., February 17, 1898.
“Hamilton Hill,
“Delavan House, Albany, New York.
“Dear Sir: Your letter of the 22d of January received, and in reply would say that the position in onr ingrain department will be" a permanent one, and there will siso be an opportunity for advancement. If you desire to accept the position, salary, will be $12 per week. Let me know by return mail what your decision will be in the matter. If you wish to accept it and would like to come at once, you may do so.”
He came on here and entered the employment.
The first point made here is that these letters are a guaranty that he should have employment that should be lasting; or, as it is stated in the petition, that it should be an employment for at least a year.
We do not understand that this conclusion can be drawn from these letters, or that the contract that was made, so far as it was made by these letters, was a guaranty for any employment for any length of time. The inquiry simply is, whether the position is a permanent position; that is to say, whether they hire men for the season only or during the tim? the business is pressing, or whether that position is one where the clerk is employed in the department for a year — one, if you pleas*», for permanent time. We understand the result of that would be, if the plaintiff came here and went into the employ of these parties at $12 per week, that that would be a hiring, simply and purely of not more than a week — at any rate, a hiring purely at will. Either party might terminate the contract at any time by giving notice to the other party that he intended to do so. It is simply a statement that he has entered into a business that is a permanent rather than a temporary business, and it refers to the position itself rather than to his employment for the position.
The plaindff having offered these letters, called witnesses and made inquiries for the purpose of showing that the use of the word “permanent” by some local custom in Toledo meant that the party, if he was employed in that place, should have epduring employment -employment for at least a year. It is sufficient to say that in reading over this evidence we are of the opinion that no evidence was adduced that really amounted to any proof of any custom of that kind, even if proof of custom or usage could be offered in evidenoe to explain the *666 use of the word “permanent,’’ which has a vory well defined meaning. What they really wanted to prove was that when a man was employed in a store at a salary of $12 a week, and told to go to work, that by the usages of the trade, by the usages and customs of the employer, and in fact in the city of Toledo, there is a well-known understanding that he was hired from year to year, or for a year at least; it could not be broken in less time than that by either party, except for cause shown. As to any well defined usage in the trade, in our judgment there was no evidence to show anything of that kind.
The court was asked to make certain requests a part of its charge, by the plaintiff, and some of those requests were given and some were not. There was a general oharge given, and the court charged the jury that the letters referred to the business as a permanent business rather than a permanent hiring, and so far as the letters were concerned they had no reference to the matter of time, unless it was shown by general custom, and that he would submit to the jury. With his general definitions of the words and phrases and the rules that govern in regard to proof of usage, we take no exceptions. We doubt very much, however, whether he ought to have submitted that question to the jury, under the facts that were before the jury. We do not allege that as a,ground of error, but simply make it as a suggestion. The verdict and judgment of the court of common pleas will be reversed on the ground that the verdict is not sustained by sufficient evidence.