**ROXANA PETROLEUM CO. v. RICE et al.**

No. 13483—Opinion Filed Nov. 18, 1924.

Rehearing Denied Jan. 7, 1925.

Second Rehearing Denied April 7, 1925.

1. **Appeal and Error—Questions of Fact— Conclusiveness of Finding — Action by Servant for Wrongful Discharge.**

An employe may be discharged by his employer by acts making it impracticable for the employe to perform the duties of his employment. and where the date of the discharge is drawn into issue, in an action for breach of contract and damages, the plaintiff claiming one date and the defendant another, and the court finds in favor of the plaintiff, and there is evidence to support the finding, the same is conclusive on appeal.

2. **Master and Servant—Termination of Employment—Breach of Contract.**

Expressions of dissatisfaction or threats to terminate a contract of general employment. or even words declaring the contract terminated will not end it. unless the party, so declaring. by overt acts, makes it impracticable for the other party to perform the duties of the employment.

3. **Attorney and Client—General Employment—Breach of Contract by Client— Damages.**

Where an attorney enters the general employment, by contract, of his client, and in so doing changes his position by giving up other clients and incurs expenses for the purpose of his employment, and is discharged by his client without reasonable cause, he may treat the contract as breached and recover damages for the loss of fees provided for in the contract.

4. **Same—Termination of Contract—Good Faith.**

A contract for permanent employment and as long as the services are satisfactory cannot be terminated for any other reason than dissatisfaction, and while the causes for dissatisfaction cannot be inquired into, the fact itself and good faith of the employer in claiming dissatisfaction may be considered.

5. **Same—"Permanent" Employment.**

To understand the term "permanent" as used in contracts of employment, we should take into consideration all the facts and circumstances of the particular case.

6. **Frauds, Statute of—Validity of Oral Agreement Possible of Performance Within Year.**

An oral agreement the performance of which is dependent upon the happening of a certain contingency is not within the statute of frauds, if the contingency is such as

may occur within one year; and this is true, although the contingency may not, in fact, happen until after the expiration of the year, and although the parties may not have expected that it would occur within that period. It is sufficient if the possibility of performance within the prescribed time existed.

7. **Attorney and Client—Contract of Permanent Employment—Mutuality.**

A contract for hiring an attorney that provides for permanent employment limited to the happening of a certain contingency, where the attorney changes his position, in giving up other valuable clients, and incurs extra expenses in office equipment and assistants, is not void for lack of mutuality.

8. **Same—General Lien of Attorney on Funds and Documents in His Possession.**

The general or retaining lien of an attorney is his right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid. This is the common-law rule and our statute providing for the attorney's lien is declaratory of this rule. The rule is broad enough to include all documents, property, or money under the lien for fees due in the general employ of the client as well as documents, property, or money coming into the hands of the attorney in the particular case in which he is representing his client.

(Syllabus by Threadgill, C.)

Commissioners'. Opinion, Division No. 3.

Error from District Court, Tulsa County; Valjean Biddison, Judge.

Action by Benjamin F. Rice and Thomas D. Lyons, doing business as "Rice & Lyons," attorneys at law, against Roxana Petroleum Company of Oklahoma, a corporation. Judgment for plaintiffs, and defendant appeals. Affirmed.

Koerner. Fahey & Young and West, Sherman, Davidson & Moore, for plaintiff in error.

A. J. Biddison, Harry Campbell, C. B. Stuart, J. F. Sharp, and M. K. Cruce, for defendants in error.

Opinion by THREADGILL, C. On November 12, 1919, the defendants in error, as plaintiffs, brought this action against plaintiff in error, as defendant, and, on October 2, 1920, they filed an amended petition making the Roxana Petroleum Corporation of Virginia a party defendant, but thereafter dismissed as to it. For convenience, the parties will be referred to in this opinion as they appeared in the trial court. The pleading. exhibits, and evidence are voluminous,

109—6

but the issues are simple. The action is based upon breach of an attorney's employment contract, and for damages resulting from the loss of fees, in giving up employment by other clients, to represent the defendant, exclusively, and for fees earned and unpaid and fees to be earned in contemplation of the contract of employment.

The defendant was an Oklahoma corporation engaged in the oil business and a subsidiary of what is known as the Royal Dutch Shell Group Combination, composed principally of the Royal Dutch Company, for the exploitation of oil wells in the East Indies, and, with its subsidiaries in the oil business, a competitor of Standard Oil in all the world. It was organized in Oklahoma about the year 1912, and operated in this state and adjoining states; and the plaintiffs were its attorneys and legal representatives from the time it was organized in Oklahoma until 1919, the time of this controversy. The relation had been extremely confidential and satisfying between the parties till about the first of the year 1919. The plaintiffs had not only represented the defendant in a strictly legal sense, but had represented it in many transactions in a business way, such as securing loans and buying and closing deals for large producing properties, and giving personal attention to many business transactions in extending the operations of the company in oil fields of this state as well as adjoining states. During this time the plaintiffs had represented other clients in the oil business and principally the Pierce Oil Company, from which they had received large fees for the services rendered until 1918, and had been paid by the defendant for their services according to the particular work done, and the legal department for handling small matters and litigation was separate and apart from their work, and occupied offices separate from the offices of the plaintiffs, and had become expensive and burdensome and unsatisfactory to defendant, and, by agreement with the plaintiffs, this department was taken over by them and the offices consolidated, and the plaintiffs were given a retainer for representing all the legal business of the company as well as the larger business matters they had been looking after, and given a retainer of $15,000 per annum, which was, thereafter, increased to $20,000, and which, it seems, was not sufficient to pay for overhead expenses of this department and leave the plaintiffs with any profit. They gave up all their other clients including an annual fee from Pierce Oil Corporation in the sum of about $17.500 a year, and applied themselves exclusively to representing the defendant.

The defendant claimed to be dissatisfied with the monthly expense bills turned in for payment, and about April, 1919, the plaintiffs obtained information leading them to believe that the defendant, under orders from the London office, desired and intended to dispense with their services, and they wrote the defendant about the matter, and considerable correspondence took place, and on April 22, 1919, there was a compromise settlement between the parties as to the amount due the plaintiffs for services rendered, and a check was issued in the sum of $15,000—to pay them up to that time, as the plaintiffs understood it, and April 30, 1919, as the defendant understood it. The testimony as to this matter is conflicting and the court in trying the case found this issue in favor of the plaintiffs. In this agreement a new contract was made as to the employment. The general offices of the company had been moved to St. Louis. The plaintiffs were to continue their services in representing the defendant in 40 or 50 lawsuits that were then pending in the courts of Oklahoma and Texas, and they were to continue in the services of the company in these two states as long as the defendant operated in these states, and as long as the services of the plaintiffs were satisfactory to them, and pay them reasonable fees for legal as well as other services, the other services being what they termed mechanical, such as dictating and writing letters, and drawing contracts, etc.

Plaintiffs entered upon the services of the company, under this new arrangement, and turned in their monthly expense accounts, which were objected to as unsatisfactory. The company refused to pay a bill for $79, being the balance due, as claimed by plaintiffs, for April, from the 22nd day to the end of the month, and for bills for June and July amounting to $4,300, and, at the same time, the official of the company further stated that it was his unpleasant function to be the executioner to inform them that they could not render services to the company any longer; and they were further informed by the defendant that any bills or monthly statements rendered would be considered as unreasonable by the company. The plaintiffs considered this a breach of their contract of employment and proceeded to write to the London office, in England, as well as to van der Gracht, the president of the company, at St. Louis, and a Mr. Andrews, the vice president at New York, making complaint of their treatment on the part of the officers of the company. This letter was written August 6, 1919, and in this letter they state that they are holding

out of moneys collected by them, $79.50 to pay on April account, $2,149.50 to pay balance on June statement, and $2,142.75 to pay July account, including closing of Sitrin deal, making a total sum of $4,371.75; they also state that they have collected certain Liberty Bonds belonging to the defendant, and are retaining $15,000 worth of the same, at par value, as assurance to them that they will be properly compensated for the breach of its agreement to continue them in its employ and to meet their reasonable accounts and pay for services rendered in the large number of lawsuits they have in hand for them. They further express, in this letter, their desire to continue in the services and to represent the company, and asking for fair treatment. After this letter was received by officials of the company the plaintiffs were notified that they were discharged from further services, and this action was brought.

The issues were made up by the petition of the plaintiffs, setting out all their transactions and dealings with the defendant from the time the company was organized in this state until their relations were severed, and the amended answer of the defendant, amounting to a general and special denial, and admission of the relations existing between the parties, and pleading, in justification of its dismissal of the plaintiffs from their services, that the plaintiffs violated their duty to the defendant in retaining the $15,000 worth of Liberty Bonds, and in keeping back certain moneys collected to pay balance due on the April account and expenses for May, June, and July of 1919, and it asks affirmative relief for the Liberty Bonds and for the $4,371.75, being the money retained by the plaintiffs.

A jury was waived and the issues were tried to the court, and the court, after eliminating the issues and evidence of plaintiffs' loss of fees by giving up clients for the exclusive services of the defendant prior to April 22, 1919, rendered judgment in favor of the plaintiffs as follows:

"It is the judgment of the court that plaintiffs be decreed to have a retaining lien on the said sum of $4,371.75 which plaintiffs held in cash, as security for payment of plaintiffs' April, June, and July, 1919, accounts as rendered; that plaintiffs have judgment for $65,150 damages for breach of modified contract of employment of April 22, 1919, and that they be decreed to have a retaining lien upon the Liberty Bonds of the par value of $15,000 until the said judgment is paid, and that plaintiffs recover their costs."

And the defendant appealed, stating numerous assignments of error, and presenting them under many propositions of law.

1. Defendant's first proposition is that plaintiffs were discharged for cause on August 14, 1919.

The parties are in sharp conflict as to the date of the discharge. The defendant contends and argues under its first proposition that plaintiffs were discharged when notice was served on them August 14, 1919, and after the letter written by plaintiffs informing the London office and the officers at St. Louis and New York that they had retained the $4,371.75 and the $15,000 worth of Liberty Bonds, and for the reason they had retained said money and bonds, and not before this was done.

Plaintiffs contend that they were discharged prior to this—after the conference of the officers in the London office—and when the president returned and informed them, in substance, that he was the executioner to tell them that their services were no longer satisfactory and any bills rendered by them would be considered unreasonable.

The court found that issue in favor of the plaintiffs, and we think the evidence is sufficient to sustain the contention on the theory that defendant, by refusing to approve the current monthly itemized expense account and by refusing payment and informing them that their services were no longer satisfactory and their monthly bills would be considered unreasonable, made it impossible for plaintiffs to perform their part of the contract. In the case of Deming Inv. Co. v. Christensen et ux., 60 Okla. 148, 159 Pac. 666, the rule is stated as follows:

"A contract, whereby C. and wife appoint D. as their agent to procure a loan of money uncoupled with an interest, may be revoked by the principal at will without liability for damages, but where, according to its terms, it is contemplated that the agent shall expend time and money to carry it out, and the agent accepts said contract and does expend time and money in pursuance of the object of the agency, and does procure a party who is willing to loan the money for the time and according to the terms of the contract, the principal cannot revoke the same except upon the burden of responding to the agent for such damages as he may suffer by reason thereof. Such contract in that state of case is not void for want of mutuality, but the same is an enforceable, valid, and binding contract."

In the body of the opinion the court uses the following language:

"Where a party bound to the future performance of a contract puts it out of his power to perform it, the other party may

treat this as a breach and sue him at once, for there is an immediate right of action for a breach of contract by anticipation. And the cases go a step farther, although technically and strictly speaking there can be no breach of contract until the time for performance has arrived, yet if before that time arrives the promisor expressly renounces the contract and declares his intention not to perform it, the promisee may, in most jurisdictions, treat this as a breach, and may at once bring an action for damages; that is, positive notice of an intended breach of a contract to be performed in the future may be treated as an actual breach. See 9 Cyc. 698, and authorities there cited."

And to the same effect the rule is stated in 13 C. J., page 657, section 733, as follows:

"In some cases a breach of the contract by one party may be of such character as to permit the other party to abandon it and sue at once for entire damages. Such an abandonment is to be distinguished from a technical rescission, in that the contract may still be resorted to by the party for the purpose of fixing the damages which he has sustained by reason of the breach occasioning the abandonment of performance. Notice to the party in default of the intention to claim damages is unnecessary."

It is true the defendant denied the conversation in which plaintiffs claimed that the president of the company gave them notice as above stated, but the court evidently believed the testimony of the plaintiffs on this issue and based its judgment upon it, and we must conclude that plaintiffs' contention, on this point, is correct, and the acts of the defendant were such as to breach the contract, in making it practically impossible for plaintiffs to continue their services.

2. Defendant's second proposition, that expressions of dissatisfaction or even threats to terminate the contract do not amount to an actual termination of it, even words declaring the contract terminated will not put an end to it, unless acted upon by both parties and the relation actually discontinued, states the law, and, under the facts of this case as above set out, we think the proposition is in favor of plaintiffs' contention. The president and secretary of the company at St. Louis, Mo., refused to approve the bills of current expenses of plaintiffs, and the president informed them that their services were not satisfactory, and they could not render bills that would be considered reasonable. and payment was refused, and plaintiffs understood this to mean they were discharged, at least, these acts of defendant made it impracticable for the plaintiffs to render services, and they wrote the London letter expressing a desire to continue the services and insisted on fair treatment in the settlement, and stating that they had in their possession money and Liberty Bonds for the purpose of protecting themselves in settlement.

3. Defendant's third proposition, that a client may discharge his attorney at any time with or without cause, incurring liability only for services up to date of discharge, does not apply to a case where the attorney, in entering into the contract, had changed his position or incurred expenses, or a case where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract. This was held by the strongest case cited by defendant in support of its proposition, being the case of Martin v. Camp, 219 N. Y. 170, 114 N. E. 46. The defendant cited many authorities in its brief to sustain its proposition, and the cases cited sustained the proposition as applied to contracts where only current expenses and definite fees are involved. but they cannot be applied to a case such as is presented by this record, where the plaintiffs compromised their claims against the company, changed their position in relation to their general practice, incurred expenses in maintaining an office for the special services of defendant, and were given permanent employment by defendant. Hamilton v. Blakeney, 65 Okla. 154, 165 Pac. 141.

Counsel for plaintiffs in their brief called attention to the following cases in support of the rule that where an attorney enters the services of his client for permanent employment and in doing so changes his position by giving up other clients, and incurs expenses for the purpose of his employment, and is discharged by his client without cause, he may treat the contract as breached and recover damages for the loss of fees provided for in the contract: Scheinesohn v. Lemonek (Ohio) 95 N. E. 913; Deorsheiner v. Herndon (Neb.) 153 N. E. 496; Sessions v. Warwick (Wash.) 89 Pac. 482; Bartlett v. Odd Fellow's Savings Bank (Cal.) 21 Pac. 743; Webb v. Trescony (Cal.) 18 Pac. 796: Brodie v. Watkins. 33 Ark. 545; Moyer v. Cantieny (Minn.) 42 N. W. 1060; Kersey v. Gorton, 77 Mo. 654; Myers v. Crockett, 14 Tex. 257; Mt. Vernon v. Patton, 94 Ill. 65; The note to Martin v. Camp. L. R. A. 1917, F. 406.

4. Defendant's fourth proposition, that where any agent is employed so long as his services are satisfactory he may be discharged at any time that his employer be-

comes dissatisfied, is a correct rule in general, where the employment is limited to the satisfaction of the employer, and the authorities cited by defendant sustains the holding of the court in Allen v. Mutual Compress Co. (Ala.) 14 South. 362; that under such a contract the employer is vested with full power to determine whether the work is satisfactory and the reasonableness of the ground of dissatisfaction cannot be inquired into by the court in an action by the servant for his discharge, but these authorities do not hold that the master can exercise the right in such a case to discharge arbitrarily, nor do they hold that the good faith of dissatisfaction cannot be inquired into. The rule, in this respect, is laid down in Electric Lighting Company v. Elder (Ala.) 21 South. 983, where the court uses the following language:

"But the dissatisfaction must be in good faith and with the performance of the contract***. A plea of dissatisfaction with the work agreed to be satisfactorily completed must allege the facts from which the dissatisfaction arises."

And again:

"He must be in good faith dissatisfied. He cannot avoid liability by merely alleging that he is dissatisfied. *** The dissatisfaction must not be capricious nor mercenary nor result from a design to be dissatisfied. It must exist as a fact. It must be actual, not feigned: real, not merely a pretext to escape liability."

Counsel for plaintiffs call attention to the following cases in support of the rule, that an employer cannot discharge an employe who is employed permanently as long as his services are satisfactory, where such discharge is for some other reason than that of satisfaction, and escape liability. Sax v. Detroit, etc., R. R. Co. (Mich.) 84 N. W. 314; Pennsylvania Railroad Company v. Doland (Ind.) 32 N. E. 802; Carring v. Carr (Mass.) 46 N. E. 117; McNeil v. Armstrong, 81 Fed. 943; Richison v. Meade (S. D.) 80 N. W. 131.

The later cases that have crystallized the rule are: American Music Stores v. Rullell, 232 Fed. 306; Schmand v. Jandorf (Mich.) 140 N. W. 996; Schuyler v. Pantages (Cal.) 201 Pac. 137; Adamson v. Alexander Milburn Company, 275 Fed. 148; Thomas Hartley Co. v. Jones (Cal.) 197 Pac. 105; Hansford v. Stevens & Company (R. I.) 98 Atl. 209; Hay v. Hassett (Iowa) 156 N. W. 734.

The principles enunciated in these cases are not in conflict with the rule in First National Bank of Waurika et al. v. Clay, 74 Okla. 112, 177 Pac. 115. In such contracts the cause of the dissatisfaction may not be inquired into, but the fact and good faith of the dissatisfaction may be considered.

5. Defendant's fifth proposition is that a contract for permanent employment is a contract indefinite as to time and terminable at will. It seems to be supported by a long list of authorities applicable to the facts of each case in which the word permanent is defined and limited by the circumstances. Lord v. Goldberg, 81 Cal. 596, 15 Am. St. Rep. 82; Davidson v. Laughlin, 138 Cal. 320, 68 Pac. 101; Farckner v. Des Moines Drug Co., 117 Iowa, 120; Sullivan v. Detroit, Ypsilanti & Ann Arbor Ry., 135 Mich. 661; Perry v. Wheeler, 75 Ky. 541; Beck v. Walkers, 24 Pa. C. Ct. 403; W. Millner & Co. v. Hamilton Hill, 10 Ohio Cir. Dec. 357; Sachs v. Mutual Union Ins. Co. (Wash.) 218 Pac. 209.

Counsel for plaintiffs contend that defendant's proposition and authorities are not applicable to a case where it clearly appears that the employe, in entering into the contract, changed his position and relation to other employment, or suffered detriment from some source as a part of the consideration for the contract entered into, and insist on the opposite to defendant's proposition being the rule, citing the following cases: Pennsylvania R. R. Co. v. Dolan (Ind.) 32 N. E. 802, 51 Am. St. Rep. 289; Cornig v. Carr (Mass.) 46 N. E. 117; Pierce v. Tenn. Coal, Iron & R. R. Co. (Ala.) 19 South. 22.

There seems to be some conflict of the authorities in the rule stated, but the difference is to be found in the facts of the cases upon which the respective rules are based. As stated in the case of Pennsylvania R. R. Co. v. Dolan, supra, to understand the meaning of the word permanent, we must take into consideration the facts and circumstances of the particular case. We are of the opinion that from the facts and circumstances attending the making of the contract of employment in the instant case it was the intention of the parties that the employment was to continue as long as the defendant was in business in Oklahoma and Texas, and the plaintiffs were not subject to discharge without cause.

6. Defendant's sixth proposition, that the contract is void under the statute of frauds, is not in accord with the great weight of authorities in construing contracts dependent upon a contingency such as we have here. The employment was to continue as long as the company did business in Oklahoma and Texas. This contingency might be-

come effective in less time than a year or it might continue for many years. The rule stated in 20 Cyc., page 200, paragraph 2, is as follows:

"An oral agreement, the performance of which is dependent upon the happening of a certain contingency, is not within the statute of frauds. If the contingency is such as may occur within one year; and this is true, although the contingency may not in fact happen until after the expiration of the year, and although the parties may not have expected that it would occur within that period. It is sufficient if the possibility of performance within the prescribed time existed."

We have substantially the same rule stated in 25 R. C. L., page 453, paragraph 28. See, also, McPherson v. Cox, 96 U. S. 404, 24 L. Ed. 746.

The case of Mellon v. Fulton, 22 Okla. 636, 98 Pac. 911, and other cases in support of this proposition are not in conflict with the rule above stated.

There is no question but what the defendant could have terminated its oil business in Oklahoma and Texas within a year from the time the attorneys were employed by the oral agreement, and, this possibility being unquestioned, if done in good faith, the contract comes clearly within the rule and the authorities cited under the rule above stated, and we must hold that the contract of employment was not within the statute of frauds.

7. Defendant's seventh proposition, that the contract is void for the want of mutuality cannot be sustained by the case cited, being Price v. Western Loan Association, 35 Utah. 379, 100 Pac. 670, for the reason the contract comes clearly within the rule and vices of the attorney were to continue so long as they were satisfactory, and he was not to be discharged without good reason, and his fee for services was $100 per month, whereas, in the instant case, the consideration for the contract was the giving up of other valuable clients for the exclusive services of the defendant, and incurring of office expenses in the way of equipment and assistants and reasonable fees to be paid by the month, and the term was fixed by the contingency of the defendant doing business in Oklahoma and Texas; and the rule to be applied in such case is to be governed by the following authorities: Louisville & N. R. Co. v. Cox (Ky.) 131 S. W. 389; Usher v. New York Central R. R. Co., 78 N. Y. Supp. 509; McMullen v. Dickinson Co. (Minn.) 65 N. W. 661; MacGregor v. Union Life Ins. Co., 121 Fed. 493; Holwig v. Schaefer Brokerage Co., 197 Fed. 691; Milholin v. Adams (Ind.) 115 N. E. 803; New-

hall v. Journal Printing Co. (Minn.) 117 N. W. 228; Carter v. Richhart (Ind.) 114 N. E. 111; Stearns v. Lakeshore R. R. Co. (Mich.) 71 N. W. 148; Mellos v. Fulton, 98 Pac. 912; Gulf C. & S. F. Ry. Co. v. Jackson (Tex.) 69 S. W. 89; Lennard v. Texana Lumber Co. (Tex.) 94 S. W. 383; Reifkin v. Dupont DeNemours Co., 290 Fed. 286.

8. Defendant's eighth proposition, that plaintiffs had no lien upon the $15,000 worth of Liberty Bonds and other moneys coming into their hands in the course of their employment is not tenable under the attorney's lien statute of this state. The general rule is laid down in 6 Corpus Juris, 766, as follows:

"Retaining Lien. The general or retaining lien of an attorney is his right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid. This lien has been recognized from the earliest times and is said to have its origin partly in custom and partly in the prevention of circuity of action. While some question has been raised as to the correctness of the term 'lien' so applied, the right itself has never been denied. It is of common-law origin and the statutes providing for it and for its enforcement are merely declaratory of the common-law rule."

In construing our statute providing for an attorney's lien, in American National Bank v. Funk, 68 Okla. 169, 172 Pac. 1078, the court laid down this general rule:

"An attorney at law has a general possessory or retaining lien on the property or money of his client in his hands for his fees or for any general balance due him from his client, and such a lien is not lost while the money is still under the control of the attorney's agent."

The rule is broad enough to include documents, property, or money under the lien for fees in general employ of the client as well as property and money coming into the hands of the attorney in the particular case in which he is representing his client.

9. As to the defendant's ninth proposition, that the acts of the plaintiffs were ample cause for discharge, and the tenth proposition, that there is nothing in the record upon which the judgment for damages can be based, and the eleventh proposition, that the court should have rendered judgment in favor of the defendant, we do not deem it necessary to extend the discussion, in view of our holding that the evidence is sufficient to sustain the judgment of the court. We, therefore, recommend that the judgment be affirmed.

By the Court: It is so ordered.