Kay STOLZER, Plaintiff in Error,

v.

Carl A. D. BEER and Mary L. E. Beer, Defendants in Error.

No. 40097.

Supreme Court of Oklahoma.

July 2, 1963.

McKeever, Glasser, McKeever & Conrad, Enid, for plaintiff in error.

Simons, Mitchell, Mitchell & Neal, by Earl B. Mitchell, Jr., Enid, for defendants in error.

BLACKBIRD, Chief Justice.

Plaintiff in error, hereinafter referred to as plaintiff, is a real estate broker. The defendants in error, hereinafter referred to as defendants, are a doctor and his wife who formerly owned, and resided at, the residential property, on account of whose sale, plaintiff is attempting, in this action, to recover a broker's commission from them.

The original contract by which defendants listed the property for sale exclusively with plaintiff, was dated August 25, 1960. In it, plaintiff broker was referred to as "we" and the word "you" referred to the owners of the property, or the defendant signing the contract. It provided in part as follows:

"*We agree to use our promotional and facilities* in finding a purchaser for your property, and to obtain the sale price of $26,500.00, payable as agreed between buyer and seller, or any other price to which you may consent. Asking price to be $27,000.00.

"*If we are successful in finding a purchaser* for this property within ninety days, or if this property is sold or exchanged during this period (or, if at a later date the property is sold to any prospect processed during our agency period) in consideration of our efforts, you, as the seller, agree to pay as commission upon the total price obtained at the rate of 5%, . . .: * * *."

Plaintiff did not personally close a sale of the property within the 90-day term or "agency period" of the above quoted written contract, or any extension thereof; but, thereafter in August, 1961, another real estate broker, Mrs. Carletta Drum, sold the property, plus "more tract", to one Anton J. Semrad, for the sum of $26,000.00. This sale, and defendants' refusal to pay plaintiff the 5% commission above prescribed, precipitated plaintiff's commencement of this action.

In her amended petition, plaintiff based her cause of action upon the above written contract's alleged extension, by an oral agreement entered into in September, 1960, approximately one month after the written contract was signed.

At the trial, plaintiff gave testimony tending to show that the oral agreement was intended to extend the exclusive agency period of the written contract; that said extension was given in consideration of plaintiff's making up, and distributing, a certain brochure (her attorney unsuccessfully attempted to introduce in evidence as plaintiff's Exhibit "A") containing pictures and descriptions of the home, and advertising some of its more desirable and/or unusual features.

Concerning the oral agreement, and the circumstances leading up to, and surrounding, it, plaintiff testified, in substance, that in the process of instituting a new promotional method of real estate sales, she went to defendants' home on September 22, 1960, and spent some time discussing with the defendant, Mrs. Mary Beer, the use of a brochure in selling their home; that Mrs. Beer liked the idea very much, but said she'd like to wait until the defendant, Dr. Beer, came home before they made a decision; that, when the Doctor came home, plaintiff went over the plan with him, and he also liked it; that he asked how much the brochure would cost, and she told him that it wouldn't cost defendants anything

above her regular 5% commission. Plaintiff further testified:

"* * * Then he wanted to know how long a listing I wanted, and I said, 'Well, Doctor, your wife has told me that she feels that I will be the one to sell the property, and I would like the assurance that if the property is sold, I would be the one to sell it.' He said, 'Well, what if it doesn't sell?', and I said 'If it doesn't sell within a reasonable length of time and * * * you would like to take * * * (it) * * * off of the market we should come to a mutual agreement about it, but I would like the assurance if it is put back on the market, I would be the broker that it would be listed with because these brochures will be circulated widely, and I feel that I should be the one to have it if I do this promotion.

"Q All right, did they agree for you to go into the brochure promotion?

"A That is right, and at that time we took measurements and all kinds of detailed information, * * *

* * * * * *

"Q Now in pursuance of that conversation * * * did you cause such a brochure to be made on that home?

"A Yes, I did."

Plaintiff further testified that she worked with defendants in showing and advertising the property, not only by the brochure, but also in the newspapers; that on January 10, 1961, the same Mr. Semrad, who as aforesaid, purchased from defendants through another broker, came to her house with a newspaper in his hand to inquire about several of her listings, telling her that he and his wife were planning to build a home; that, if they did, contractors by the name of the Heinrichs Brothers would do it, but that they might not build, if they could find a ready-built home they liked; that she finally gave Semrad the addresses of some of her listings because he convinced her that all he wanted to do was "drive by" them; that, as he started out

of her office, she reached up to the rack by the door and handed him one of the brochures on the defendants' home, and told him it was built by Heinrichs Brothers and that it was the home he should have; that Semrad expressed the opinion that it was one of the prettiest home in Enid, but stated, in substance, that he didn't want to spend quite that much money, but that she knew he could afford it; that she suggested he go see it, and that he promised to talk it over with his wife, and, if she decided she wanted to go see it, he would telephone plaintiff so she could arrange an appointment for that purpose; that the next day (January 11, 1961) the defendant, Mrs. Beer, telephoned plaintiff and told her that Mr. Semrad had been out to see the house the day before, with a brochure in his hand, that he returned that morning, and that she (Mrs. Beer) thought "* * * they are really interested and I wish you would follow up on it"; that on the same day, she tried unsuccessfully to contact Mr. Semrad; that on the 12th she talked to him and he told her he didn't want that much house and yard; that every time she saw the Semrads after that she tried to talk to them about the property; that thereafter, Mr. Semrad looked at, and talked with her about, other properties; that during the latter part of April, 1961, Mrs. Beer suggested plaintiff try to get Mr. Semrad to make an offer on the property, but, when plaintiff did, he told her he didn't want to spend more than $20,000.00, though he realized the house he had planned to build would cost more than that; that though he indicated he wouldn't pay as much as $25,000.00 for defendants' house, he suggested she find out the least defendants would take for it; that she complied with this request and contacted Dr. Beer, who told her he couldn't take less than $25,000.00 net to him.

Plaintiff further testified that she later included the subject house in a new advertising folder, or brochure, she had printed and entitled "The Home Viewers Digest"; that on August 6, (1961) she addressed four

hundred of these for mailing to prospects, whose names appeared in her files, and sent copies of it, both to the defendants and to Mr. Semrad; that the morning after she addressed these new brochures Mrs. Beer telephoned plaintiff and complained that her efforts hadn't "been getting any activity", and expressed her intention to list it with Carmeletta Drum; that plaintiff objected to that being done and reminded Mrs. Beer of the previous agreement giving plaintiff exclusive listing of the property; that plaintiff then telephoned Dr. Beer and complained to him, telling him, among other things, that if defendants wanted to withdraw the exclusive listing they had given her, that they should wait until she had time to get the results of her distribution of The Home Viewers Digest and that she thought she should have until the 1st of the (next) year for that; that Dr. Beer promised to telephone her later about that, but never did, and later she learned that a sale of the property to Mr. Semrad had been closed by Carmeletta Drum.

As a witness for plaintiff, Mr. Semrad corroborated her testimony concerning his going to see the subject property after plaintiff had given him the brochure containing pictures and information about it. He further testified that his wife never went to look at, or inspect, the property, and neither he nor she became interested in it, until Mrs. Drum talked to them about it; and that it was Mrs. Drum's efforts that sold them the property. Semrad further testified that the price of $26,000.00 he paid defendants for the property included "more tract."

At the close of plaintiff's evidence, counsel for the defendants orally interposed a demurrer on grounds he stated as follows:

"* * * for the reason that the same together with all reasonable inferances and implications adducable therefrom, will be insufficient to prove that plaintiff is entitled to judgment as against the defendants, and further demur, specifically, for the reason

that plaintiff's evidence has conclusively shown and proved that a written agreement was altered and changed by an unexecuted oral agreement, and for the further reason that the evidence introduced by plaintiff conclusively shows that such an agreement, if it was entered into, was invalid for the reason that it is a violation of the Statute of Frauds * * *".

After an argument on this demurrer in his chambers, the trial judge entered an order, and/or judgment, sustaining it, without specifying therein his reason, or reasons, for said ruling. After the overruling of plaintiff's motion for a new trial, she perfected the present appeal.

Plaintiff herein presents for reversal the trial court's alleged errors in sustaining defendants' demurrer, and in excluding from the evidence the hereinbefore mentioned brochure she had offered as her Exhibit "A", as aforesaid.

As to the ruling on the demurrer, there seems to be some difference of opinion between counsel for the respective parties as to the particular ground, or grounds, upon which it was based. However, the only arguments advanced in support of said ruling, or judgment, are, in substance that:

(1) The oral agreement of September, 1960 (about which plaintiff testified), varied the terms of the parties previous written agreement, that said oral agreement was not executed, and therefore it was incompetent and a nullity, citing Grenard v. Ports, Okl., 298 P.2d 430, and Tit. 15 O.S.1961 § 237;

(2) The written contract, even if, and as, amended by the subsequent oral one, is not enforceable under the Statute of Frauds because it was not to be performed "* * * within a year from the making thereof", quoting Tit. 15 O.S.1961, § 136(1), and citing Dicks v. Clarence L. Boyd Co., Inc., 205 Okl. 383, 238 P.2d 315, 28 A.L.R.2d 870.

■ We think there are portions of plaintiff's testimony from which the jury (if the cause had been submitted to it) might have concluded that in going to the work and expense of making up and distributing the first brochure—the one featuring defendants' home—she performed and executed the promise she gave defendants in return, and as a new consideration, for their promise to extend the previous (written) exclusive listing contract past its original term of 90 days. In this connection, see Shadwick v. Smith, 147 Ky. 159, 143 S.W. 1027. It would have been proper for the court to have instructed the jury that if it found the oral agreement was performed or executed, then it was capable, under the law (sec. 237, supra) of having modified, altered, or amended the previous written contract. See Burgess v. Oklahoma Gas Utilities Co., 171 Okl. 294, 42 P.2d 240, and other cases cited in the Annotation at 42 A.L.R. 987, 995 ff. Defendants do not deny that the contract originally entered into, made plaintiff the exclusive agent for the sale of defendants' property. However, in answer to plaintiff's assertion that this rendered it unnecessary for her to establish that she was the procuring cause of the property's sale, defendants say that this could not be so, "after the defendants withdrew." The quoted part of this statement is a self-serving assumption. A crucial issue presented by the pleadings, and about which plaintiff introduced evidence, was whether or not defendants were at liberty to withdraw from, or rescind, their contract with plaintiff (without becoming liable to pay her the commission prescribed therein) at the time they decided to treat the sale of their residence as no longer in her hands, and listed it with Mrs. Drum. If the jury had been given the opportunity of considering the matter, and had determined that the original term of plaintiff's exclusive agency had been extended by an executed oral agreement, then it might also have determined that it was in force and effect at the time of the property's sale by Mrs. Drum. In forestalling any such opportunity, by sustaining defendants' demurrer, the trial court erred.

■ Defendants' argument (2), supra, cannot be upheld because the contract—if found to have been extended by the subsequent oral agreement about which plaintiff testified—might well have been performed within a year from its making, by plaintiff's possible sale of the property, as she contends, citing Roxana Pet. Co. v. Rice, 109 Okl. 161, 235 P. 502. See also the Annotations at 104 A.L.R. 1006, and 28 A.L.R.2d 878. On the basis of the facts, which plaintiff's testimony tends to show, this case is readily distinguishable from the Dicks case, supra, which involved contracts for "permanent employment" not claimed to have been based upon any consideration other than a promise. Here, according to plaintiff's testimony, she had not only made a promise to defendants to promote the sale of their property by the new and untried method of brochure, which promise was accepted by them, but she had *acted on* that promise. In this connection notice Pfeiffer v. Peppers Ref. Co., 197 Okl. 603, 173 P.2d 581, 583. In accord with the foregoing, we have concluded that the trial court's ruling on defendants' demurrer cannot be sustained on any of the grounds which have come to our attention. Therefore, we can only conclude that it was error.

Plaintiff's argument that the trial court's exclusion of the brochure was also error is based upon the theory that it "put squarely in issue whether the plaintiff was the procuring cause of the sale." As an answer to this argument, defendants say that if plaintiff had an exclusive agency for the sale of the property, as she has always contended, it was unnecessary for her to attempt to show that she procured such sale. Defendants thus concede the proposition of law for which plaintiff, in her argument under her "Assignment of Error No. 1" has cited Leatherman v. Freeman, Okl., 266 P.2d 473. In view of the parties' apparent agreement that if plaintiff had any kind of a contract with defendants at the time of its alleged breach, it was one of

exclusive agency, and that the brochure related to a matter not a necessary, or proper, issue in an action of this character, and as we have already determined that the trial court should have ordered a new trial on account of its error in sustaining defendants' demurrer to plaintiff's evidence, we reserve ruling on plaintiff's "Assignment of Error No. 2."

In accord with the foregoing, the judgment of the trial court overruling plaintiff's motion for a new trial is hereby reversed, and this cause is remanded to said court with directions to sustain said motion.

HALLEY, V. C. J., and WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

DAVISON, J., dissents.