The **CHEROKEE LABORATORIES, INC.,** Caribe Oilwell Products, Inc., and Cherokee Laboratories, Inc., Defendants-Appellants,

v.

**Ruby PIERSON,** Executrix of the Estate of Joseph B. Pierson, Deceased, Plaintiff-Appellee.

No. 173–68.

United States Court of Appeals Tenth Circuit.

Aug. 15, 1969.

Rehearing Denied Sept. 18, 1969.

86

A. F. Ringold, Tulsa, Okl., for appellants.

James R. Eagleton, Tulsa, Okl. (W. L. Eagleton and Donald D. Cameron, Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, LEWIS and HICKEY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Joseph B. Pierson, hereinafter called Pierson, brought this action against The Cherokee Laboratories, Inc., Caribe Oilwell Products, Inc., and Cherokee Laboratories, Inc. The Cherokee Laboratories, Inc., hereinafter called Cherokee, was an Oklahoma corporation, incorporated on March 11, 1952. Caribe Oilwell Products, Inc., was an Oklahoma corporation, incorporated on September 11, 1953. Cherokee Laboratories, Inc., is a Texas corporation, organized under the laws of the State of Texas on February 20, 1964. On January 20, 1964, Cherokee merged into its subsidiary, Caribe, and on March 24, 1964, Caribe merged into the Texas corporation, Cherokee Laboratories, Inc. Since the claim of Pierson arose prior to such mergers, under the provisions of Title 18 of the Oklahoma Statutes, § 1.167, it may be prosecuted as if such mergers had not taken place, and the surviving corporation is fully liable and responsible for the acts and obligations of its predecessors.

By such action Pierson sought recovery on an oral retirement contract entered into between him and Cherokee, for unpaid retirement salary and certain items incidental thereto, and for unpaid salary due him for services rendered as the Chairman of the Board and Chief Executive Officer of Cherokee.

On September 26, 1967, Pierson died testate, and on December 11, 1967, Ruby Pierson, his widow and the duly appointed and acting executrix of his last will and testament, was substituted as party plaintiff. She will hereafter be referred to as the executrix. From a judgment in favor of the executrix, Cherokee and its successors have appealed.

The case is unusual, in that it has been tried three times to the court without a jury. At the conclusion of the first trial, after all relevant evidence had been introduced, briefs had been filed, and the case argued, the trial judge found all the material facts and law in favor of Pierson. Among his findings and conclusions was a crucial one; that the employment contract was a legal and enforceable contract. The court also found that Pierson was entitled to recover, but did not specify the amount. The findings of fact were made orally, and counsel for Pierson was instructed to prepare findings of fact and conclusions of law. Proposed findings, conclusions, and a judgment for $58,247.99 were prepared by counsel for

Pierson and presented to the court. Thereafter, on December 2, 1966, the trial court filed findings of fact and conclusions of law and granted Pierson a judgment for $712.46. Thereupon, Pierson filed a motion for a new trial.

On January 16, 1967, the trial judge entered an order sustaining the motion for a new trial. On June 27, 1967, the case was again tried, and on August 9, 1967, the trial court made findings of fact and conclusions of law, and awarded Pierson judgment for $3,325.46.

On August 17, 1967, Pierson filed a motion for a new trial. The material portions of such motion are set out in note 1.[1]

On December 11, 1967, after full arguments by attorneys for both plaintiff and Cherokee, which were supplemented by written briefs, the trial court entered an order overruling the motion for a new trial.

On December 15, 1967, the trial judge filed an order, dated December 14, 1967, which read:

"The Court heard arguments for motion for new trial on December 11th, 1967 and thereafter signed and entered an order overruling motion for new trial.

"The Court desires to further study the file, the briefs and the facts.

"IT IS THEREFORE ORDERED that the order filed herein overruling motion for new trial be and the same is set aside, cancelled and held for naught."

Cherokee made no objection to such order, made no request for a hearing thereon, and in no way apprised the court that it contended the order was improper.

On January 9, 1968, the trial judge entered an order sustaining Pierson's motion for a new trial, which stated:

"Upon further study of this case, including all of the pleadings and the briefs of the parties, including the exhibits, the Court is of the opinion that in the interest of justice that *plaintiff's motion for new trial should be sustained*." (Italics ours.)

On February 14, 1968, the third trial was had and on March 8, 1968, the court found in substance the following facts, which are fully supported by the oral and documentary evidence.

Pierson ·was born January 5, 1885. Prior to July 19, 1959, he had retired. On that date he came out of retirement and assumed the duties and responsibilities of Chairman of the Board and Chief Executive Officer of Cherokee, because of the death of his son-in-law, who preceded him as such Chief Executive Officer. The son-in-law had received a

1. "1. That Trial Judge erred as a matter of law in not entering a $58,247.99 judgment, together with interest thereon at the rate of 6% per annum from November 1, 1966, for plaintiff after having found all material questions of fact and law for plaintiff. At the conclusion of the trial and after all relevant evidence was in, after arguments of counsel, and after the filing of briefs, the Trial Judge found all of the material facts and law in favor of the plaintiff, as follows:

"(A) There was a legally enforceable oral contract between plaintiff and defendants, and under all the circumstances in this cause it does not come within the statute of frauds and if it does come within the statute of frauds there is such writing and memoranda as to comply with the statute of frauds.

"Judge Luther Bohanon stated:

" 'But the Court finds that there was a legal, enforceable oral contract as between the plaintiff and defendant, and that under all the circumstances in this case it does not come within the statute of fraud[s], and if it does come within the statute of fraud[s], then there is such written, writing and memoranda as to comply with the statute of frauds.'

\* \* \* \* \*

"Judge Luther Bohanon stated:

" 'Well, as I have said, there is a binding agreement as between plaintiff and defendant, an enforceable contract and agreement.'

\* \* \* \* \*

" 'There was an agreement and it's not within the statute of frauds. If it is within the statute of frauds, there is enough memoranda and facts and circumstances to satisfy the statute of frauds.' "

salary of $48,000 per year. Pierson's salary was $24,000 per year. Pierson continued in such capacity and at such salary for approximately 15 months, until November 23, 1960, at which time at a Board of Directors meeting of Cherokee, Pierson indicated that he desired at some time in the foreseeable future to retire from his position with Cherokee and would be willing to take a reduction in his salary and continue in the management of Cherokee, in order to obtain some form of retirement program that would pay him $7,500 per year for life. The Board of Directors of Cherokee accepted his offer and reduced his salary from $24,000 to $18,000 per year, effective November 1, 1960, and agreed to pay Pierson $7,500 per year retirement pay for the remainder of his life, upon his retirement. Pierson accepted the reduction in salary, with the understanding that upon his retirement he was to receive $7,500 per year for the balance of his lifetime. As a result of those negotiations, a verbal agreement was entered into between Pierson and the Directors of Cherokee, who were also the principal and majority stockholders thereof, that Pierson, from the date of his retirement, would receive $7,500 per year during the remainder of his life. In reliance upon such oral agreement for retirement pay, Pierson continued in the capacity of Chairman of the Board and Chief Executive Officer of Cherokee until December 17, 1962, at which time he was retired by it. On the last-mentioned date, the Board of Directors of Cherokee elected M. C. Bolin, Jr., Chairman of the Board in place of Pierson.

On December 17, 1962, Cherokee, acting by and through its Directors, who constituted the principal and majority stockholders and officers of Cherokee, entered into a verbal agreement with Pierson that upon his retirement from active service with Cherokee, he would be paid the sum of $5,000 per year during his life, payable monthly, as a pension and retirement program. Pierson agreed to accept the sum of $5,000 per year in lieu of the November 23, 1960,

agreement for $7,500 per year. In the agreement of December 17, 1962, it was further agreed that Pierson would be reimbursed for any out-of-pocket expenses in connection with his duties to Cherokee, and that Cherokee would furnish him a company automobile as consideration for his being available and rendering consultant services to Cherokee and making periodic inspections of the affairs of Cherokee. Pierson also agreed to refrain from rendering services for any competitor of Cherokee or any of its affiliates.

At a special meeting of the Board of Directors of Cherokee, held at Tulsa, Oklahoma, on December 17, 1962, at which all of the Directors and Officers of the Corporation were present, the following resolution was duly made, seconded, and unanimously adopted by such Board of Directors:

"RESOLVED, that upon the retirement of Joseph B. Pierson from active service in this corporation, he shall be paid the sum of $5,000.00 per year for life, and shall be provided with an automobile and be reimbursed for his out-of-pocket expenses in connection with his duties to this corporation, in consideration for his being available and rendering consultant services to the corporation, making periodic inspections of the affairs of the corporation and its affiliates, and refraining from performing any service for any competitor of this corporation or any of its affiliates.

"FURTHER RESOLVED, that the proper officers of this corporation are authorized to cause a contract to be prepared by counsel setting forth in detail the specific terms and conditions which are generally referred to above, and, upon presentation and approval of such contract, to execute the same on the part of this corporation."

On January 1, 1963, Pierson retired from active management of Cherokee, and in reliance upon the retirement and pension agreement between him and Cherokee, commenced the performance

of his consulting services to and for Cherokee. Pierson fully performed all of such consulting services and did everything required of him by Cherokee, and it was fully satisfied with such services. Indeed, at the trial, counsel for the parties stipulated that Pierson was available and did render consultant services to Cherokee, made periodic inspections of the affairs of Cherokee, and refrained from performing any service for any competitor of Cherokee or any of its affiliates, all to the complete satisfaction of Cherokee and in full compliance with the provisions of the oral agreement of December 17, 1962.

Cherokee, pursuant to such agreement and pension and retirement program, in January 1963 commenced the payment monthly of one-twelfth of $5,000, or $416.67, and continued to pay that sum monthly thereafter until August 1963, the last payment being made on or about July 26, 1963.

On or about July 5, 1963, Cherokee notified Pierson that the retirement payments to him would be terminated, effective August 1, 1963, and from and after July 27, 1963, Cherokee failed and refused to pay the monthly installments of the $5,000 per year, as agreed to in the oral agreement of December 17, 1962.

The court further found that Pierson was entitled to judgment for $416.67 for each month, beginning on August 20, 1963, to the date of his death on September 26, 1967, aggregating $20,833.50, together with interest at the rate of six per cent per annum on each of the unpaid monthly installments from the due date thereof, amounting to $3,006.58.

At the time of Pierson's retirement on January 1, 1963, he advanced on behalf of Cherokee $1,504 in payment for a 1963 Rambler automobile. At the trial, the parties stipulated that such amount was due and owing by Cherokee to Pierson.

On January 1, 1963, on the retirement of Pierson, Cherokee owed him the sum of $1,821.46 in back salary, which was due him on December 31, 1962. Counsel for the parties stipulated that such amount was due and owing to Pierson.

The court found that Pierson was entitled to judgment for $1,504, which was due in January 1963, and unpaid back salary, which was due on January 1, 1963, or a total of $3,325.46, together with interest thereon at six per cent per annum from January 1, 1963, to the date of trial on February 14, 1968, amounting to $1,038.75.

At about the time of Pierson's retirement on January 1, 1963, Cherokee secured for him as a part of the retirement agreement the Rambler automobile, secured insurance therefor, and purchased the state license tag therefor. Pierson used such automobile while performing services for Cherokee and rendered expense accounts covering the operation of such automobile, which Cherokee honored and paid. Beginning in the year 1964, Cherokee refused to buy an automobile license for the automobile and refused to purchase insurance covering the automobile. As a result, Pierson was unable to use the automobile during 1964 and in subsequent years.[2]

The court found that, as a result, Cherokee breached its agreement, to Pierson's damage in the amount of $1,065 per year for 1964, 1965, and 1966, and for $887.40 for that part of 1967 preceding the death of Pierson on September 26, 1967.

In January 1963, the Chief Executive Officer of Cherokee assured Pierson that the verbal retirement contract theretofore entered into would be reduced to writing. In reliance on such promise and representation, Pierson ful-

---

2. The title to the Rambler automobile was in the name of Cherokee, hence, when it refused to continue to provide license plates for the automobile, it was impossible for Pierson to obtain license plates, and for that reason he could not use the automobile, even though he had possession of it. The final judgment directed him to deliver possession of the automobile to Cherokee on demand. Pierson was ready and willing so to do.

90

ly performed under such retirement contract, at the request of the executive officers of Cherokee.

Subsequent to January 1, 1963, Bolin, the Chief Executive Officer of Cherokee, and other executive officers on numerous occasions requested Pierson to perform his retirement agreement by making periodic inspections of the affairs of Cherokee and its affiliates, and by rendering consulting services to Cherokee. Pursuant to such requests, Pierson made numerous inspections of the affairs of Cherokee and its affiliates, furnished the required consultant services to Cherokee, and fully performed his part of the retirement agreement.

The court found that Pierson was entitled to a judgment for $32,286.69, principal and interest, together with interest thereon at the rate of six per cent per annum from February 14, 1968, together with costs. It further found that Cherokee was entitled to the possession of the Rambler automobile, which was in storage.

The court further concluded that because of the actions of Cherokee and its affiliates, above set out, Cherokee was estopped to deny the oral agreement of December 17, 1962.[3]

After a careful consideration of the entire record, we are of the opinion that the evidence amply affords substantial support for the findings of fact made by the trial court, and that such findings are not clearly erroneous. They are, therefore, binding on this court.[4]

3. With respect to the oral contract, the court expressly found after the third trial:

"1. That on * * * November 23, 1960, * * * at a Board of Directors meeting of * * * Cherokee * * * Pierson indicated that he desired at some time in the foreseeable future to retire from the position of Chairman of the Board and Chief Executive Officer of" Cherokee "and that he would be willing to take a reduction in his salary and continue in the management of" Cherokee "in order to obtain some form of retirement program that would pay him $7,500.00 per year for life. The Board of Directors of * * * Cherokee * * * accepted * * * Pierson's offer and reduced his salary from $24,000.00 per year to $18,000.00 per year effective November 1, 1960, and agreed to pay * * * Pierson $7,500.00 per year for the duration of his life upon his retirement. * * * Pierson accepted the reduction in salary and remained as Chief Executive Officer of" Cherokee, "with the understanding that upon his retirement he was to receive $7,500.00 per year for the balance of his lifetime. It was the verbal understanding and agreement between * * * Pierson and the Directors of" Cherokee, "who were also the principal and majority stockholders thereof, that upon * * * Pierson's retirement he would receive $7,500.00 per year for the remainder of his life. That in reliance upon such pension and retirement program being placed in effect, * * * Pierson continued in the capacity of Chairman of the Board and Chief Executive Officer until December 17, 1962, at which time * * * Pierson was retired by * * * Cherokee * * *. That on December 17, 1962, the Board of Directors of * * * Cherokee * * * met at Tulsa, Oklahoma and elected M. C. Bolin, Jr., Chairman of the Board, thereby replacing and retiring * * * Pierson.

"2. That on December 17, 1962" Cherokee, "acting by and through its Directors, * * * entered into a verbal agreement with * * * Pierson that upon his retirement from active service with the corporation he would be paid the sum of $5,000.00 per year for life, payable monthly, as a pension and retirement program. * * * Pierson agreed to accept this $5,000.00 per year pension and retirement agreement in lieu of the November 23, 1960 $7,500.00 per year pension and retirement agreement above mentioned. That, in addition thereto, * * * Pierson would be provided with a company automobile for the remainder of his life. It was further agreed that * * * Pierson would be reimbursed for any out-of-pocket expenses in connection with his duties to" Cherokee, "in consideration for his being available and rendering consultant services to" Cherokee, "making periodic inspections of the affairs of" Cherokee. "In addition, * * * Pierson agreed to refrain from performing service for any competitor of" Cherokee "or any of its affiliates."

4. White v. Continental Casualty Co., 10 Cir., (decided August 11, 1969) 414 F.2d 549.

Rule 59(d) of the Rules of Civil Procedure for the United States District Courts, as amended February 28, 1966, effective July 1, 1966, reads:

"(d) *On Initiative of Court.* Not later than 10 days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor."

A judgment, following the second trial, was entered on August 9, 1967.

Following entry of the judgment in the third trial, and on April 19, 1968, Cherokee filed a motion in which it challenged the validity of the order of January 9, 1968, sustaining the motion of the executrix for a new trial, on the ground that the trial court was without jurisdiction to enter such order for two reasons:

(1) That the order was entered on the court's own initiative later than 10 days after the entry of the judgment on August 9, 1967; and

(2) That in such order the court failed to specify the grounds therefor.

It is clear that the court did not act under the first sentence of Rule 59(d). It sustained the motion of the executrix for a new trial.

■ We think there can be no doubt that the court had power by timely action to set aside its order of December 11, 1967, which was entered after full arguments of counsel, supplemented by written briefs, because it desired to study further the files, briefs, and record.

Surely, such an order, entered after the lapse of only four days from the order overruling the motion for a new trial, was timely.[5]

It will be observed that the order of January 9, 1968, recited, not that it *granted* the motion for a new trial, but that it *sustained* the motion of the executrix for a new trial.

The phrase, "in the interest of justice," was not a ground for granting the motion.

■ Had Cherokee requested the court by proper and timely motion to advise the parties whether it sustained the motion of the executrix on a ground not stated in such motion, and if it did so, to amend its order sustaining such motion by setting forth therein the grounds therefor, it might have been entitled to the relief it asked, but Cherokee made no such motion. Instead, it waited until the third trial was completed and then stood on the contention that because the court failed to specify in the order the grounds therefor, it acted without jurisdiction and the order was void. We disagree. In our opinion, the requirement that the court specify in the order the grounds therefor is a procedural requirement and not a jurisdictional requirement. Moreover, the record does not show that the court sustained the motion of the executrix for a reason not stated in such motion. Indeed, the record implies the contrary.

■ We conclude the order of January 9, 1968, was not void for want of jurisdiction of the court to enter it.

15 Okl.St.Ann. § 136 in part provides:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

"1. An agreement that, by its terms, is not to be performed within a year from the making thereof."

Counsel for Cherokee contend that the oral retirement contract entered into between Cherokee and Pierson was within the statute and that the resolutiom of Cherokee's Board of Directors, recorded and signed by its Secretary, was not a

---

5. Gila River Ranch, Inc. v. United States, 9 Cir., 368 F.2d 354, 357.

sufficient memorandum to take the contract without the statute.

All parties to the action agreed, and the minutes of December 17, 1962, specifically stated, that the period of the contract was the life of Pierson. Upon his death the oral contract was to come to an end and Cherokee was to be relieved from any additional obligations thereunder, except those that had accrued before Pierson's death.

 It is a well settled general rule that an oral agreement, the continued performance of which is dependent upon the happening of a stated contingency, is not within the statute of frauds, if the contingency is one that may occur within one year. This is true, although the contingency may not, in fact, happen until after the expiration of the year.[6]

The Supreme Court of Oklahoma follows the general rule, as stated above. In Roxana Petroleum Co. v. Rice, 109 Okl. 161, 235 P. 502, Syllabus 6 by the Court, which in Oklahoma is the law of the case, states:

> "An oral agreement the performance of which is dependent upon the happening of a certain contingency is not within the statute of frauds, if the contingency is such as may occur within one year, and this is true, although the contingency may not, in fact, happen until after the expiration of the year, and although the parties may not have expected that it would occur within that period. It is sufficient if the possibility of performance within the prescribed time existed."

 Obviously, the rule applies to a contract in which such contingency is the death of one of the parties.

The case of Dicks v. Clarence L. Boyd Co., 205 Okl. 383, 238 P.2d 315, 28 A.L.R.2d 870, is clearly distinguishable on the facts from the instant case, as the Supreme Court of Oklahoma pointed out in Stolzer v. Beer, Okl., 383 P.2d 686, 690, where it cited with approval and reaffirmed its decision in the Roxana case.

We conclude the contract was not within the statute of frauds.

Affirmed.

---

6. 3 Williston on Contracts, 3rd ed., §§ 495, 499; Roxana Petroleum Co. v. Rice, 109 Okl. 161, 235 P. 502.